FRANK R. TRABUCCO, JR., & another  *vs.* ARTHUR J.
NELSON, JR., & another.

Essex. September 12, 1979. — November 8, 1979.

Present: HALE, C.J., GRANT, & KASS, JJ.

*Jurisdiction,* Specific performance. *Contract,* Sale of real estate..

In an action for specific performance of an agreement to sell the
   defendants' home which provided in part that the obligations of
   the parties would cease if the sellers were unable to give good title,
   the plaintiffs were not entitled to specific performance where,
   through no fault of the sellers who acted in good faith, the proper-
   ty was encumbered by a mortgage at the time the deed was to be
   delivered. [644]

CIVIL ACTION commenced in the Superior Court on
November 16, 1976.

The case was heard by *DeGuglielmo,* J., a Municipal
Court judge sitting under statutory authority.

*John N. Crean* for the defendants.

*David J. Hallinan* for the plaintiffs.

HALE, C.J. This is an action for specific performance
of an agreement to sell the defendants' home in Peabody.
The case was referred to a master, who submitted a
report. We summarize the facts found by the master
which are material.

On July 30, 1976, the plaintiffs entered into an agree-
ment with the defendants to purchase the defendants'
home in Peabody. The plaintiffs paid a deposit toward
the purchase of the home. Under the purchase and sale
agreement the property was to be conveyed free from en-
cumbrances. Section 10 of the agreement provided, in
part: "If the Seller shall be unable to give title or to

make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed the premises do not conform with the provisions hereof, then any payments made under this agreement shall be refunded and all other obligations of the parties hereto shall cease and this agreement shall be void and without recourse to the parties hereto, unless the Seller elects to use reasonable efforts to remove any defects in title. . . ." The parties agreed to pass papers on or before September 27, 1976.

Ten and a half months earlier, on September 15, 1975, the defendants had entered into an agreement to buy a parcel of land in Boxford from Northeast Builders, Inc. (Northeast).[1] Northeast was to construct a home for the defendants on the Boxford property. On December 15, 1975, Northeast conveyed the Boxford lot to the defendants, who gave a $50,000 mortgage to the Salem Savings Bank; $30,000 was paid to Northeast. As a further part of their financing arrangement with Northeast and the bank, the defendants were to execute a note in the amount of $12,948.70 payable to Northeast, secured by a mortgage of their Peabody home. This note and mortgage were to be held in escrow by the attorney for the bank with a proviso that the note and mortgage were to be delivered to Northeast if it completed construction of the Boxford home while the defendants were still owners of the Peabody home. Upon such completion and delivery Northeast would have the right to record the mortgage.

Construction of the defendants' Boxford home did not proceed according to schedule. The defendants became actively involved in the construction by purchasing materials and paying subcontractors and Northeast's employees directly. The Boxford home was not completed by July 30, 1976. Nevertheless, on that date, which was the date on which the purchase and sale

---

[1] Northeast Builders, Inc., was not made a party to this action.

agreement between the defendants and the plaintiffs was executed, the mortgage was recorded. No notice was given to the defendants that the mortgage deed was being released by the escrow agent.[2]

Because of the delay in completion of their Boxford home, the defendants requested and received an extension of their agreement with the plaintiffs until October 27, 1976. In late August and early September, 1976, the defendants continued work on their Boxford home, began to move some of their possessions there, and enrolled their children in the regional high school. On October 23, 1976, Northeast had not obtained an occupancy permit for the Boxford home, and substantial work remained to be done under the construction agreement. The defendants then retained counsel. It was only then that they learned that the mortgage deed to Northeast had been recorded.

The defendants communicated with the principal officer of Northeast on or about October 23, 1976, concerning a discharge of the mortgage. They were advised that the mortgage would be discharged only if $12,948.70 were paid.

On October 27, 1976, the plaintiffs appeared at the Essex South District registry of deeds prepared to purchase the defendants' home pursuant to the extension of the purchase and sale agreement. The defendants refused to perform their part of the agreement because of the Northeast mortgage.

The master concluded that § 10 of the purchase and sale agreement governed the rights of the parties if the sellers were unable to give good title. He concluded that the mortgage deed was never intended to have been recorded under the circumstances which existed on July 30, 1976. Rather, it was intended to be held by the escrow agent to secure the performance by the defend-

---

[2]The master made no findings as to the execution of the mortgage, to whom it was delivered or by whom it was recorded.

ants of their financial obligation in the event that the builders complied with their construction obligations. The master concluded that the recording of the mortgage deed, under the circumstances, was the equivalent of a court attachment without notice and that the defendants had acted in good faith with regard to their obligations under the purchase and sale agreement. He also concluded that under § 10 of the agreement, the obligations of the parties under the agreement would cease upon return of the plaintiffs' deposit and that the plaintiffs were not entitled to specific performance.

A judge in the Superior Court after considering the master's report and the purchase and sale agreement between the parties made rulings and ordered the entry of a judgment ordering that the defendants convey their Peabody home to the plaintiffs. We do not accept the rulings made by the judge, and reverse the judgment.

Section 10 provides for the termination of the purchase and sale agreement if the seller is unable to give good title. A clause nearly identical in language was construed in *Old Colony Trust Co.* v. *Chauncey,* 214 Mass. 271, 273 (1913): "This clause means that if it turns out that without fault on the part of the defendants subsequent to the execution of the contract they have a defective title, then, after refunding payments made, all obligations of both parties shall cease." The clause, therefore, does not protect a seller who is not acting in good faith and who does not intend to carry out the agreement. *Berry* v. *Nardozzi,* 362 Mass. 145, 149 (1972).

We agree with the conclusion of the master that the Nelsons acted in good faith and without fault. The mortgage given by the defendants to Northeast was neither intended nor expected to interfere with the agreement to sell the Peabody home. The mortgage deed was delivered to an escrow agent and the release and recording of the deed were accomplished in violation of the defendants' agreement with Northeast. Northeast would only

Trabucco *v.* Nelson.

agree to discharge the mortgage upon full payment of the note, but the obligations of the parties with respect to the uncompleted building contract were uncertain. The cases which have construed clauses similar to § 10 have not found bad faith merely because a seller was responsible for the encumbrance on the property or because it was within the seller's power to have the encumbrance removed by paying off an obligation. See *Lucier* v. *Williams,* 323 Mass. 458, 461-462 (1948) (seller need not pay off note and obtain discharge of mortgage placed on property by her testator); *Barrett* v. *Carney,* 337 Mass. 466, 467-468 (1958) (lien for municipal betterment assessment, payable by seller, already on property when agreement was executed); *Sawl* v. *Kwiatkowski,* 349 Mass. 712, 714-716 (1965) (seller had failed to pay inheritance tax, subjecting property to possible tax lien).

This case can be distinguished from *Lafond* v. *Frame,* 327 Mass. 364, 366-368 (1951), relied upon by the plaintiffs. In *Lafond,* the seller had given a mortgage to secure her note before the execution of the purchase and sale agreement. The amount due under the note was undisputed but the seller refused to pay it off. She offered no proof that she was financially unable to do so or that circumstances had changed since the execution of the purchase and sale agreement. The situation justified a finding of bad faith. Here, however, the amount of the debt that the defendants might owe Northeast is disputed, and the recording of the mortgage was an unanticipated circumstance.

The plaintiffs' reliance on *Dennett* v. *Norwood Housing Assn.,* 241 Mass. 516, 521 (1922), is also misplaced. The purchase and sale agreement here placed no affirmative duty on the defendants to clear the title.

The judgment is reversed, and a new judgment is to enter dismissing the action.

*So ordered.*