147 P.3d 100

**J. David JOHNSON, Plaintiff–Appellant,**

v.

**John LAMBROS, Defendant–Respondent,**

and

**Jane Doe Lambros, Defendant.**

No. 31867.

Court of Appeals of Idaho.

Oct. 27, 2006.

Rude, Jackson & Daugharty, Coeur d'Alene, for appellant. Paul W. Daugharty argued.

Dean & Kolts, Coeur d'Alene, for respondent. Charles R. Dean Jr. argued.

LANSING, Judge.

J. David Johnson brought this action against John Lambros for breach of an agreement for the sale of real property. Johnson, the purchaser, alleged that Lambros breached the contract by failing to obtain clear title prior to the closing date. Following a bench trial, the district court found no breach, and the court adhered to this decision after hearing a motion for reconsideration. Johnson appeals the order denying his motion for reconsideration.

## I.

## BACKGROUND

In June 2001, the parties entered into a written agreement (the "Agreement") under which Lambros agreed to sell a parcel of real property to Johnson, who was looking for investment property with which to complete a deferred tax exchange under Internal Revenue Code § 1031 (a "1031 Exchange"). In order for Johnson to gain this tax benefit, it was necessary that closing occur before October 28, 2001. The pertinent provisions of the Agreement provided:

8. TITLE CONVEYANCE: Title of SELLER is to be conveyed by warranty deed, unless otherwise provided, and is to be marketable and insurable . . . No liens, encumbrances or defects, which are to be discharged or assumed by BUYER or to which title is taken subject to, exist unless otherwise specified in this agreement.

9. TITLE INSURANCE
(A) TITLE COMMITMENT: Prior to closing the transaction SELLER . . . shall furnish to BUYER a commitment of a title insurance policy showing title to said premises. BUYER shall have 5

business days from receipt of the commitment or not less than twenty-four (24) hours prior to closing, within which to object in writing to the condition of the title as set forth in the commitment. If BUYER does not so object, BUYER shall be deemed to have accepted the condition of the title. It is agreed that if the title of said premises is not marketable, or cannot be made so within 3 business days after notice containing a written statement of defect is delivered to SELLER, BUYER'S Earnest Money deposit will be refunded to BUYER and SELLER shall pay for the cost of title insurance cancellation fee, escrow and legal fees, if any.

In compliance with the Agreement, Lambros obtained a title insurance commitment, which revealed for the first time a *lis pendens* and a lawsuit filed by a third party who was attempting to enforce an option to purchase the property.[1] Rather than terminating their transaction, Johnson and Lambros executed an addendum, which stated:

1. Buyer is ready, willing and able to proceed with closing this transaction on this 10th day of July 2001. However, seller is not able to close transaction and provide clear, unencumbered title to subject property as of this date.

2. Buyer is willing to extend the closing date of this transaction to on or before August 10th 2001 at 5 p.m.

3. The purpose of this agreement is to allow seller take [sic] whatever action is necessary to provide clear title to subject property.

In an attempt to clear the title, Lambros promptly filed a motion for summary judgment in the third party's lawsuit. A short time later, Johnson and Lambros executed a second addendum nearly identical to the first, which extended the closing date until

---

1. The third party's lawsuit arose from an earlier contract in which Lambros had agreed to sell topsoil from the property to the third party for a project at another location. The contract also gave the third party an option to purchase the property. During the project, Lambros terminated the contract, contending that he had not been paid and that the third party's methods had

caused needless damage to the land. Although Lambros was aware that the third party had attempted to exercise the option, at the time he entered the Agreement with Johnson he was under the impression that the matter had been resolved and was unaware that the third party had filed a *lis pendens*.

September 14, 2001. It was the parties' expectation that summary judgment would be granted to Lambros in the third-party action several days before September 14. Lambros became unable to obtain judgment, however, because the third party filed for bankruptcy protection before Lambros's motion could be heard. Lambros remained unable to clear the title for several years [2] due to the bankruptcy. Consequently, the sale of the property to Johnson was never completed.

Johnson filed this action for breach of the Agreement, seeking specific performance of the contract, or in the alternative, damages of approximately $65,000 for additional tax liability that he contends he incurred because the 1031 Exchange did not occur. Johnson alleged that the addenda to the Agreement created an affirmative duty for Lambros to provide clear title to the property. A court trial was conducted, after which the court issued findings and conclusions determining that Lambros had not breached the Agreement. The court found that the Agreement and addenda did not include a promise by Lambros to clear title but, rather, gave Johnson the right to a refund of his earnest money, as his sole remedy, if Lambros could not deliver title satisfactory to Johnson. The court further found that Lambros had discharged any obligation he had in regard to the title by taking reasonable steps to clear the title until his efforts were frustrated by the third party's bankruptcy. The court also concluded that even if a breach had been shown, Johnson would not have been entitled to the damages he sought because they were speculative.

Before judgment was entered on the court's findings and conclusions, Johnson filed a motion for reconsideration, renewing his argument that the addenda created a duty for Lambros to provide clear title to the property. Johnson did not present any addi-

tional evidence with this motion. After a hearing, the court denied the motion for reconsideration, a decision that Johnson now appeals.

## II.

## ANALYSIS

### A. Johnson Was not Required to Present New Evidence with His Motion for Reconsideration

Preliminarily, we must address Lambros's contention that because Johnson presented no new evidence with his motion for reconsideration, the motion was properly denied and we need not address the merits of the case. This argument is based on the timing of Johnson's motion for reconsideration. On October 20, 2004, the district court issued its finding of facts and conclusions of law in which it determined that Lambros had not breached the Agreement. On November 2, 2004, Johnson filed a motion for reconsideration. This motion did not include any additional evidence, but merely requested reconsideration based on the evidence presented at trial. Judgment was entered three days later, on November 5, 2004, followed by an amended judgment on January 26, 2005. A hearing on Johnson's motion for reconsideration was held on February 14, 2005, at which time the motion was denied.

 Lambros argues that because Johnson's motion to reconsider was filed before judgment was entered, it was necessarily brought under Idaho Rule of Civil Procedure 11(a)(2)(B), which governs motions for reconsideration of interlocutory orders, and not under I.R.C.P. 59(e), which authorizes motions to alter or amend a judgment. This distinction is significant, Johnson asserts, because while a party is not permitted to present new evidence with motions made pursuant to I.R.C.P. 59(e),[3] a motion for re-

---

**2.** Ultimately, Lambros obtained clear title through proceedings in the bankruptcy court.

**3.** Because Rule 59(e) motions are brought after judgment, new evidence may not be presented with such motions. As we have said:

> Rule 59(e) proceedings afford the trial court the opportunity to correct errors both of fact

or law that had occurred in its proceedings; it thereby provides a mechanism for corrective action short of an appeal. *First Sec. Bank v. Neibaur*, 98 Idaho 598, 570 P.2d 276 (1977). Such proceedings must of necessity, therefore, be directed to the status of the case as it existed when the court rendered the decision upon which the judgment is based.

consideration under Rule 11(a)(2)(B) *must* be accompanied by new evidence. When a Rule 11(a)(2)(B) motion is not supported by new evidence, Johnson asserts, the trial court necessarily acts within the scope of its discretion in denying the motion.

Although there is language in some appellate opinions that could be construed to support Lambros's argument, we disagree with his characterization of the requirements for such a motion. In our view, the case law applying Rule 11(a)(2)(B) *permits* a party to present new evidence when a motion is brought under that rule, but does not *require* that the motion be accompanied by new evidence.

■ Several decisions of the Idaho appellate courts have held that Rule 11(a)(2)(B) motions were properly denied in the absence of additional evidence that would provide a basis upon which to reconsider the prior order. An example is *Coeur d'Alene Mining Co. v. First Nat'l Bank of North Idaho,* 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990), where the trial court, acting pursuant to I.R.C.P. 56(d), deemed certain substantially uncontroversial facts as true prior to trial. The plaintiff moved for reconsideration, arguing that the trial court had erred in making such a finding as to a particular fact. The court declined to alter its ruling. On appeal, the plaintiff argued that the trial court should have taken into account certain deposition testimony that it apparently had not considered. The Idaho Supreme Court noted that, when presented with a motion for reconsideration of an interlocutory order pursuant to I.R.C.P. 11(a)(2)(B), "the trial court should take into account any new facts presented by the moving party that bear on the correctness of the interlocutory order. The burden is on the moving party to bring the trial court's attention to the new facts." *Coeur d'Alene Mining Co.* at 823, 800 P.2d at 1037. The Supreme Court held that the trial court had not erred because the appellant had not properly directed the court's attention to the deposition, and thus the trial court had been given "no basis upon which to reconsider its order." *Id.* This opinion does not state that a trial court cannot reconsider

its own interlocutory orders for facial errors or errors of law; rather, it places the burden on the moving party to draw to the trial court's attention any new evidence that the movant may be relying upon.

A similar case is *Devil Creek Ranch, Inc. v. Cedar Mesa Reservoir & Canal Co.,* 126 Idaho 202, 879 P.2d 1135 (1994), which involved a disputed water rights claim. In a previous appeal, the Idaho Supreme Court had vacated a summary judgment in favor of the defendants. On remand, the plaintiff requested summary judgment, arguing that the disposition in the appeal represented a full vindication of its claimed water rights. The district court disagreed and denied a subsequent motion for reconsideration under I.R.C.P. 11(a)(2)(B). The Supreme Court determined that the district court had correctly denied the motion for reconsideration, saying:

> Subsequent to [the first appeal], the district court was not bound by its prior findings and conclusions and was in a position to modify its prior order as to matters not passed upon by this Court or controlled by the law of the case. *See Hutchins v. State,* 100 Idaho at 665–66, 603 P.2d at 999–1000. [The plaintiff] had the opportunity at that juncture to submit a "full and complete presentation of all available facts." *Coeur d'Alene Mining Co. v. First Nat'l Bank,* 118 Idaho 812, 823, 800 P.2d 1026, 1037 (1990) (quoting *J.I. Case Company v. McDonald,* 76 Idaho 223, 229, 280 P.2d 1070, 1073 (1955)). However, [the plaintiff] submitted no supporting affidavits, depositions, or admissions that would bring to the district court's attention new facts bearing on the correctness of the interlocutory order. A party filing a motion to reconsider pursuant to Rule 11(a)(2)(B) carries the burden of bringing to the trial court's attention the new facts. *Id.; see also Idaho First Nat'l Bank v. David Steed & Assoc.,* 121 Idaho 356, 361, 825 P.2d 79, 84 (1992) (trial court should have considered affidavit and exhibit submitted by party in support of Rule 11(a)(2)(B) motion). The district court,

*Lowe v. Lym,* 103 Idaho 259, 263, 646 P.2d 1030, 1034 (Ct.App.1982).

therefore, had no basis on which to grant Devil Creek Ranch's motion for reconsideration, and the denial of the motion is affirmed.

*Devil Creek Ranch, Inc.,* 126 Idaho at 205, 879 P.2d at 1138. Although this passage could be interpreted to mean that a party requesting reconsideration under Rule 11(a)(2)(B) must present additional evidence with its motion, the passage is equally consistent with an interpretation that the plaintiff had given the district court no reason to doubt the correctness of its initial order denying summary judgment.

In *Jordan v. Beeks,* 135 Idaho 586, 589, 21 P.3d 908, 911 (2001), the plaintiffs sued their former attorney for malpractice. Summary judgment was granted in favor of the defendant attorney. The plaintiffs filed a motion for reconsideration, which was accompanied by several affidavits, arguing that the district court improperly weighed the evidence and applied an incorrect legal standard. The district court took into account the content of the affidavits and "re-read everything," but nevertheless refused to depart from its original decision. *Id.* at 592, 21 P.3d at 914. On appeal, the Supreme Court affirmed the district court's denial of the reconsideration motion, stating that "the district court was provided with no new facts to create an issue for trial, and thus there was no basis upon which to reconsider its summary judgment order." *Id.* This case does not stand for the proposition that a court given no new evidence with a motion for reconsideration has nothing to reconsider; it merely recognizes that if a trial court's conclusions were correct on the previous record, and it does not thereafter receive any information that would change its previous ruling, there is no basis for it to overturn its initial decision.

*Nationsbanc Mortg. Corp. of New York v. Cazier,* 127 Idaho 879, 884, 908 P.2d 572, 577 (Ct.App.1995) involved the defendants' refusal to surrender property after foreclosure. The district court granted summary judgment in favor of the plaintiff mortgage corporation. The defendants then moved for reconsideration and summary judgment in their favor, arguing that the plaintiff's legal description of the property was flawed, and

they provided affidavits to attack the correctness of a survey of the land. The district court concluded that the opinions in the affidavits were conclusory and therefore presented no new evidence to create a genuine issue of material fact, a position with which we agreed. This case stands only for the unremarkable principle that when summary judgment could be prevented only by the presentation of new evidence raising a factual issue for trial, evidence that does not rise to that standard will not require that an order for summary judgment be vacated.

None of these authorities preclude reconsideration of a trial court's interlocutory decision on the bases of the initial evidence. Indeed, a rule requiring new evidence on a motion for reconsideration would be a cause for concern. It would prevent a party from drawing the trial court's attention to errors of law or fact in the initial decision, precluding correction of even flagrant errors except through an appeal.

Accordingly, we hold that the absence of new evidence accompanying Johnson's motion for reconsideration did not, standing alone, require that the motion be denied.

**B. Lambros Did not Breach the Contract**

■ We proceed, therefore, to the question whether the district court erred in denying the motion for reconsideration on the merits. The decision to grant or deny a request for reconsideration generally rests in the sound discretion of the trial court. *Watson v. Navistar Int'l Transp. Corp.,* 121 Idaho 643, 654, 827 P.2d 656, 667 (1992); *Slaathaug v. Allstate Ins. Co.,* 132 Idaho 705, 979 P.2d 107 (1999). Whether the district court erred in declining to reconsider its decisions turns on the propriety of its initial interpretation of the contract and its determination that Lambros was not in breach. If a contract is clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law, and the intent of the parties must be determined from the plain meaning of the contract's own words. *City of Idaho Falls v. Home Indem. Co.,* 126 Idaho 604, 607, 888 P.2d 383, 386 (1995). If, however, the contract is deemed to be ambiguous, the interpretation of the contract docu-

ment is a question of fact which focuses on the intent of the parties. *Independence Lead Mines Co. v. Hecla Mining Co.,* 143 Idaho 22, 137 P.3d 409, 413 (2006). Whether a contract is ambiguous is a question of law over which we exercise free review. *Id.* Because Johnson did not produce any additional information with the motion for reconsideration, we examine the trial court's decision in light of the evidence before it when it rendered its initial findings and conclusions.

Johnson makes two arguments on appeal. He contends that the addenda to the Agreement gave rise to an affirmative duty that Lambros actually provide good title, or alternatively, that Lambros's efforts to secure clear title were insufficient.

■ Johnson posits that the addenda created a duty that Lambros actually provide clear title, thus superseding the remedy contained in paragraph 9. In particular, Johnson contends that the language in the third section of the addenda, which states that "[t]he purpose of this agreement is to allow seller [to] take whatever action is necessary to provide clear title to subject property," modified the Agreement from one in which Johnson had the right to reject an encumbered title to one in which Lambros made an affirmative promise to *actually* acquire and transfer clear title.

■ Johnson is correct in asserting that addenda are controlling over any inconsistent provisions in a pre-printed, fill-in-the-blank agreement. *See* Idaho Code § 29–109; *Airstream, Inc. v. CIT Financial Serv., Inc.,* 111 Idaho 307, 310 n. 2, 723 P.2d 851, 854 n. 2 (1986); *Werry v. Phillips Petroleum Co.,* 97 Idaho 130, 136, 540 P.2d 792, 798 (1975). In this case, however, the district court correctly found that the addenda and Agreement are not inconsistent. Paragraph 8 of the Agreement states that the title to be conveyed by Lambros must be marketable and insurable. In recognition that this might not occur, however, paragraph 9 provides the exclusive remedy for such a failure by requiring a refund of Johnson's earnest money and requiring that Lambros bear certain costs incurred during the attempt to perform. The language of the addenda did not create an additional legal duty outside the terms of

the original contract, but only extended the time limit for Lambros to secure good title and explained the reason for this extension. Nothing about the addenda suggests that the failure to provide marketable title would become subject to a remedy other than the remedy specified in paragraph 9.

■ Alternatively, Johnson argues that the addenda imposed upon Lambros a duty to make all possible efforts to fulfill his obligation of providing clear title, up to and including paying the third party any sum necessary to induce a release of his claim. Johnson argues that Lambros therefore breached by attempting only one unsuccessful method to resolve the lawsuit with the third party.

■ Johnson's argument invokes the general contract principle that if a contract contains a condition precedent to a party's performance obligation and the occurrence of the condition is within the control of that party, the party must make a good faith effort to bring about that condition. A condition precedent is an event that is not certain to occur, but which must occur unless nonoccurrence is excused, before performance under a contract will become due. *Wade Baker & Sons Farms v. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints,* 136 Idaho 922, 925, 42 P.3d 715, 718 (Ct.App.2002); *World Wide Lease, Inc. v. Woodworth,* 111 Idaho 880, 887, 728 P.2d 769, 776 (Ct.App.1986). Whether a provision in a contract amounts to a condition precedent is generally dependent on what the parties intended, as adduced from the contract itself. *McMinn v. Holley,* 86 Idaho 186, 192, 384 P.2d 229, 231 (1963). Although the district court did not use the words "condition precedent," its decision that performance was excused by Lambros's inability to provide clear title was essentially a finding that the contract contained an unfulfilled condition precedent.

■ Generally speaking, if there is a failure of a condition precedent through no fault of the parties, no obligation of performance arises under the contract. *Mecham v. Nelson,* 92 Idaho 783, 787, 451 P.2d 529, 533

(1969); *World Wide Lease, Inc.*, 111 Idaho at 887, 728 P.2d at 776. However, if the happening of the condition is within the exclusive or partial control of the party whose obligation is conditioned upon the event, there may arise an implied duty to make a good faith effort to perform that condition. *Wade Baker & Sons Farms*, 136 Idaho at 925, 42 P.3d at 718. Johnson does not explicitly rely on this doctrine, but it is the substance of his argument.

If a condition precedent is under the control of one party, there is generally an implied promise that the party will "make some reasonable effort to cause the event to happen." *Schlueter v. Nelson*, 74 Idaho 396, 399, 263 P.2d 386, 387 (1953). An illustrative application of this principle can be found in *Wade Baker & Sons Farms*. In that case, Baker Farms had an option to purchase a parcel of land that it had previously owned. In anticipation of this reacquisition, Baker Farms entered negotiations with a farmer to lease the land. Before signing a lease with the farmer, however, Baker Farms agreed to sell its option to LDS Corporation. Under the agreement, Baker Farms was to retain the monetary benefit of the anticipated lease with the farmer. It was agreed that the farmer would lease the land from LDS Corporation, who would then forward the rent received from the farmer to Baker Farms. However, LDS Corporation's obligation to pay the rent to Baker Farms was conditioned upon its receipt of rent from the farmer. The farmer began farming on the land and, apparently falsely, represented to LDS Corporation that he was paying the rent directly to Baker Farms through some side agreement. LDS Corporation did not investigate further, did not collect rent from the farmer, and did not pay Baker Farms. Baker Farms, who had received no rent, sued LDS Corporation. LDS Corporation asserted that its performance had never become due because the condition precedent to its obligation—payment of the rent by the farmer—had never occurred. We determined that nonoccurrence of the condition precedent was wholly or partially within the control of LDS Corporation, and remanded the case for further inquiry into whether LDS Corporation had breached an implied obligation to take rea-sonable steps to collect the rent or had materially contributed to the nonoccurrence of this condition precedent. *Wade Baker & Sons Farms*, 136 Idaho at 925–28, 42 P.3d at 718–21.

It is thus apparent that a seller of real property may have an implied obligation to make a good-faith effort to secure clear title where conveyance of clear title is a condition precedent to completion of the sale. This is illustrated by a New York decision, *Naso v. Haque*, 289 A.D.2d 309, 734 N.Y.S.2d 214 (N.Y.App.Div.2001). As in the case before us, the parties in *Naso* had entered into a land sale contract with a clause providing that if the seller was unable to convey good title, the seller's obligation to the buyer was limited to refunding the amounts already paid and certain costs of examining the title. The seller did not cure title defects, and the buyer sued for specific performance. The court observed that the remedy provision " 'contemplates the existence of a situation beyond the control of the parties,'" *Id.* at 310, 734 N.Y.S.2d 214 (quoting *Mokar Props. Corp. v. Hall*, 6 A.D.2d 536, 539, 179 N.Y.S.2d 814 (1958)), and noted that it "implicitly requires the seller to act in good faith." *Naso* at 310, 734 N.Y.S.2d 214. The court held that the defendants had failed to make a good faith effort to cure the title defects, and since "the defendants' inability to convey marketable title was self-created, the remedy limitation clause in the contract of sale did not bar the plaintiff from seeking specific performance." *Id.See also King v. Knibb*, 447 A.2d 1143, 1146 (R.I.1982) (obligations under the contract ceased when seller could not convey good title and showed that she made a good faith effort to do so); *Trabucco v. Nelson*, 8 Mass.App.Ct. 641, 396 N.E.2d 466, 468 (1979) (clause in purchase and sale agreement providing for termination of agreement if seller is unable to give good title does not protect seller who is not acting in good faith).

In the present case, securing good title was at least partially within Lambros's control, although he clearly did not have any power over the third party's decision to seek bankruptcy protection. Lambros was under

an implied obligation to make a good faith effort to obtain marketable title. The determinative question, then, is whether he did so. The district court, after hearing the trial evidence, found that Lambros had met this obligation through his attempts to secure a judgment in the third party's lawsuit. The court also stated that the evidence did not establish that the third party was willing to accept money to release the *lis pendens*.

 Whether the facts establish a violation of the contract is a question of law over which we exercise free review. *Hughes v. Fisher*, 142 Idaho 474, 480, 129 P.3d 1223, 1229 (2006). Based on the evidence here, which is largely undisputed, we find no error in the district court's determination that Lambros's efforts to clear the title were sufficient, and thus that he did not breach his implied obligation to make a good faith effort to secure marketable title. We reject Johnson's argument that it is the seller's obligation in this circumstance to pay whatever sum a third party may demand, no matter how disproportionate to the value of the land or the strength of the third party's claim, in order to clear title and effectuate the condition precedent to a sale. Only *reasonable* steps are required.

 Because Lambros fulfilled his obligations under the Agreement but was unable to convey marketable title, the remedy provision of paragraph 9 governs and precludes the damages sought by Johnson. *See Robison v. Compton*, 97 Idaho 615, 617, 549 P.2d 274, 276 (1976) (holding that a similar clause in a real estate contract was binding and, at least in the absence of bad faith, foreclosed an action for a different remedy where the seller was unable to convey clear title). It follows that the district court was correct in denying Johnson's claims and in denying his motion for reconsideration.

## C. Attorney Fees

 Lambros requests an award of attorney fees pursuant to an attorney fee clause in the Agreement. As the Agreement specifies that the prevailing party will be entitled to attorney fees in any litigation arising out of the Agreement, Lambros is awarded attorney fees incurred on this appeal.

## III.

## CONCLUSION

Neither the Agreement nor the addenda imposed upon Lambros an affirmative duty to actually clear title to the property. Rather, Lambros was under an implied obligation to make a good faith effort to secure clear title. The trial court properly found Lambros satisfactorily performed this obligation. Johnson's remedy for Lambros's inability to convey clear title is therefore limited to that provided under paragraph 9 of the Agreement. The district court's decision denying Johnson's motion for reconsideration is affirmed. Costs and attorney fees to respondent.

Chief Judge PERRY and Judge GUTIERREZ concur.

