**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 38605

VICTORIA JOHNSON, )
)
    Plaintiff-Appellant, )
)
v. )
)
NORTH IDAHO COLLEGE, an Idaho )
corporation, )
)
    Defendant-Respondent. )
)

Coeur d'Alene, April 2012 Term

2012 Opinion No. 84

Filed: May 31, 2012

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

District Court order granting summary judgment on discrimination claim, affirmed.

James M. McMillan, Wallace, argued for appellant.

Naylor & Hales, PC, Boise, for respondent. Bruce J. Castleton argued.

---

BURDICK, Chief Justice

This case comes before this Court from the district court's grant of summary judgment against Victoria Johnson (Johnson), who brought a discrimination claim under the Idaho Human Rights Act (IHRA) against North Idaho College (NIC). Johnson alleged that her instructor at NIC, Donald Friis (Friis), had sexually harassed her and that NIC is vicariously liable for that harassment. The district court granted summary judgment for NIC, holding that NIC's *Faragher/Ellerth* affirmative defense was factually supported, and that Johnson failed to establish a genuine issue of material fact. Johnson now appeals that decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Johnson attended NIC beginning in the fall of 2001, and alleges that her introductory computer class instructor, Friis, began sexually harassing her shortly thereafter. Johnson alleges that this harassment caused her to withdraw from the class, which put her below the required number of classes needed to keep her financial aid. Shortly after the semester, Johnson met with

1

a counselor at NIC, Judy Bundy, to discuss options going forward. At this meeting, Johnson told Bundy that Friis made her uncomfortable.

Upon her re-enrollment in January 2004, Johnson was informed that she needed to complete the introductory computer class and that Friis would again be the instructor. Johnson enrolled in the class, and alleges that Friis was overly nice, flirtatious, and touched her inappropriately through the spring of 2004. During the first half of the spring semester, Johnson informed Sharon Olson, a teaching assistant in the class that Johnson hired as a private tutor, that Friis made her uncomfortable. At the mid-term of the Spring 2004 semester, Johnson stopped attending class and did not complete any more assignments. Per Johnson's request, Friis agreed to give her a grade of "I" for incomplete. NIC policy mandates that an incomplete grade becomes an "F" if coursework is not completed on time. Johnson alleges that while the grade was still pending, Friis asked her out on dates and left inappropriate messages.

In preparation for the Spring 2005 semester, Johnson again met with Judy Bundy. It was at this meeting that Johnson was informed of the grade change from "I" to "F." Also at this meeting, Johnson told Bundy of the alleged sexual harassment and her belief that the grade change was retaliatory. Bundy then contacted NIC's official in charge of receiving reports of sexual harassment, Brenda Smith (Smith). After being alerted, Smith did the following: she informed Johnson of her ability to file a formal complaint, which Johnson did in February 2005; she contacted Friis about the allegations and gave him an opportunity to respond; and she convened NIC's Sexual Harassment Advisory Committee (Committee) to investigate the allegations. The Committee determined that Friis had violated NIC's sexual harassment policy, but that no grade retaliation had taken place. The Committee also recommended strong sanctions against Friis, who ultimately accepted NIC's offer to let him resign in lieu of termination.

Johnson initially filed her claim against NIC and Friis in state district court on September 26, 2006. The complaint had nine causes of action including "negligent supervision/hiring/retention," sexual harassment, and gender discrimination in violation of the Constitutions of Idaho and the United States. Specifically, Johnson alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), and the Idaho Human Rights Act, I.C. §§ 67-5901 to -5912. NIC then removed the case to the U.S. District Court for the District of Idaho based on the federal questions raised in Johnson's complaint, and filed a Motion for

Summary Judgment on all counts in that court. On August 8, 2008, United States Magistrate Judge Candy Dale issued a Report and Recommendation stating that Friis' Motion for Summary Judgment should be granted. The U.S. District Court adopted the magistrate's recommendation. Johnson appealed this decision to the Ninth Circuit Court of Appeals, which entered a memorandum opinion on October 13, 2009. In an unpublished opinion, a three-judge panel affirmed the decision of the federal district court on every count but the IHRA claim. *Johnson v. N. Idaho Coll.*, 350 F. App'x 110, 112 (9th Cir. 2009). The panel held that the district court incorrectly applied a Title IX analysis to Johnson's IHRA claim, when Title VII is the appropriate analog. *Id*. The matter was remanded back to the federal magistrate court. *Id*.

On January 21, 2010, the federal magistrate court issued a Report and Recommendation stating that the matter should be remanded to state court for further proceedings, since all of the federal claims had been eliminated. The federal district court adopted the magistrate's Report and Recommendation on February 9, 2010.

With the matter back in state district court, NIC filed a Motion for Summary Judgment and an accompanying statement of undisputed facts on July 22, 2010. In a memorandum decision and order, the district court denied NIC's Motion for Summary Judgment, concluding that there were genuine issues of material fact. NIC then filed a motion for reconsideration pursuant to I.R.C.P. 11(a)(2)(B). The district court granted NIC's Motion for Reconsideration, and subsequently granted NIC's Motion for Summary Judgment in an oral opinion on January 11, 2011. Johnson timely appealed.

## II. ANALYSIS

### A. Whether the district court erred in granting NIC's Motion for Reconsideration.

Johnson first argues that the district court abused its discretion when it granted NIC's Motion for Reconsideration, since the motion contained no new or additional facts. According to Johnson, NIC's Motion for Reconsideration was simply a re-briefing of the issues already presented before the district court.

Johnson's argument is patently absurd. NIC's motion for reconsideration was made pursuant to I.R.C.P. 11(a)(2)(B), which states in pertinent part that:

> A motion for reconsideration of any interlocutory orders of the trial court may be made at any time before the entry of final judgment but not later than fourteen (14) days after the entry of the final judgment. A motion for reconsideration of any order of the trial court made after entry of final judgment may be filed within fourteen (14) days from the entry of such order . . . .

This Court has previously interpreted the rule in *Coeur d'Alene Mining Co. v. First National Bank of North Idaho*. 118 Idaho 812, 800 P.2d 1026 (1990). This Court held that:

> When considering a motion of this type, the trial court should take into account any new facts presented by the moving party that bear on the correctness of the interlocutory order. The burden is on the moving party to bring the trial court's attention to the new facts. We will not require the trial court to search the record to determine if there is any new information that might change the specification of facts deemed to be established.

*Id*. at 823, 800 P.2d at 1037.

Idaho Rule of Civil Procedure 11(a)(2)(B) does not expressly contain a new evidence requirement. On this point, NIC cites *Johnson v. Lambros*, 143 Idaho 468, 147 P.3d 100 (Ct. App. 2006). In *Lambros*, the Court of Appeals held that "a rule requiring new evidence on a motion for reconsideration would be a cause for concern. It would prevent a party from drawing the trial court's attention to errors of law or fact in the initial decision, precluding correction of even flagrant errors except through an appeal." *Id*. at 473, 147 P.3d at 105. Neither the rule nor *Coeur d'Alene Mining Co.* explicitly says that new facts are needed. In *Coeur d'Alene Mining*, denial of the motion for reconsideration was found to be appropriate, since the trial court had no basis upon which to reconsider its order.

More recently, this Court has stated that "[t]he trial court must consider new evidence that bears on the correctness of an interlocutory order if requested to do so by a timely motion under Rule 11(a)(2)(B) of the Idaho Rules of Civil Procedure." *PHH Mortg. Serv. Corp. v. Perreira*, 146 Idaho 631, 635, 200 P.3d 1180, 1184 (2009). In *Rocky Mountain Power v. Jensen*, this Court held that:

> When considering a motion for reconsideration under I.R.C.P. 11(a)(2), the district court should take into account any new facts or information presented by the moving party that bear on the correctness of the district court's interlocutory order.

No. 37998, 2012 WL 231254, at \*7 (Idaho Jan. 26, 2012).

A motion for reconsideration is a motion which allows the court—when new law is applied to previously presented facts, when new facts are applied to previously presented law, or any combination thereof—to reconsider the correctness of an interlocutory order. In this case, the district court did just that, and in a manner fitting within the broad language articulated in *Rocky Mountain Power*, where the most important consideration is the correctness of the

4

interlocutory order. We review the district court's grant of summary judgment in the following section.

**B.  Whether the district court erred in granting summary judgment to NIC on the ground that there was no genuine issue of material fact.**

Since the district court properly considered NIC's Motion for Reconsideration, it becomes necessary to analyze whether the district court properly granted summary judgment. Johnson argues that in this context, IHRA is analogous to Title VII of the federal Civil Rights Act and should be interpreted accordingly. NIC's position is two-fold. NIC first argues that if this Court finds that IHRA does not allow for *respondeat superior* liability for educational discrimination claims, then Johnson has failed to show that NIC had actual notice of Friis' actions prior to January 2005. If this Court follows the reasoning of the Ninth Circuit, NIC argues that there is no genuine issue of material fact as to its claims under the *Faragher/Ellerth* affirmative defense, and that Johnson has failed to meet her burden under this affirmative defense.

1.  Standard of Review

When reviewing an order for summary judgment, the standard of review for this Court is the same standard as that used by the district court in ruling on the motion. Summary judgment is appropriate if 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' I.R.C.P. 56(c). Disputed facts should be construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. This Court exercises free review over questions of law.

*Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011) (quoting *Castorena v. Gen. Electric*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010)).

2.  The proper analysis of IHRA in the educational context.

Idaho Code section 67-5909(7)(a), states in pertinent part that:

It shall be a prohibited act to discriminate against a person because of, or on a basis of, race, color, religion, sex or national origin, in any of the following subsections.

. . .

(7) For an educational institution:

> (a) To exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, and privileges of the institution . . . .

Idaho Code section 67-5902(10) defines educational institution "as a public or private institution and includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, school system, or university and a business, nursing, professional, secretarial, technical, or vocational school and *includes an agent of an educational institution . . . .*" (emphasis added).

In its analysis of the claim, the Ninth Circuit found that Title VII, which permits *respondeat superior* liability, contains nearly identical language to I.C. § 67-5902(10).[1] *Johnson v. N. Idaho Coll.*, 350 F. App'x 110, 112 (9th Cir. 2009); *see also Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) ("[T]he obvious purpose of this [agent] provision was to incorporate respondeat superior liability into the statute.") (alteration in original).

Indeed, in *Bowles v. Keating* this Court noted that in terms of prohibiting employment discrimination based on sex, I.C. § 67-5909 is a "parallel state statute to Title VII of the Civil Rights Act of 1964." 100 Idaho 808, 811, 606 P.2d 458, 461 (1979). Given this precedent, it would be appropriate to use the same analysis in the educational dynamic of instructor and student. *See also Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (where the U.S. Supreme Court applied the employment framework to the educational context "when a teacher sexually harasses . . . a student").

In this light, it is appropriate to apply the employer/employee analogy to the instructor/student dynamic when dealing with educational discrimination. Because IHRA defines an education institution to include the agents of the institution, we interpret IHRA similarly to Title VII, and include *respondeat superior* liability in educational discrimination claims.

---

[1] Title VII states in pertinent part that:

> It shall be an unlawful employment practice for an employer-

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e-2(a)(1). "The term employer means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person . . . .*" 42 U.S.C. § 2000e(b) (emphasis added).

3. <u>Whether there was a genuine issue of material fact.</u>

Johnson argues that based on the evidence currently in the record, a rational trier of fact could reasonably find: that Friis was acting in a supervisory capacity over Johnson; that a portion of the alleged acts took place within the scope and course of Friis' employment; that adverse educational action was taken against Johnson; that NIC did not exercise reasonable care to prevent and correct sexually harassing behavior; and that Johnson did not unreasonably fail to take advantage of preventative or corrective opportunities. NIC argues that under the Title VII analogy, there is no genuine issue of material fact because of the *Faragher/Ellerth* affirmative defense.

### a. *The conclusions of the district court.*

The district court originally denied NIC's motion for summary judgment, concluding that there were two genuine issues of material fact: first, whether Friis' alleged conduct occurred within the course and scope of his employment; and second, whether Johnson unreasonably failed to take advantage of any preventative or corrective opportunities provided by NIC to avoid harm, as required by *Faragher*. On reconsideration, the district court granted NIC's motion for summary judgment in an oral judgment in open court. As to the issue of whether Friis' alleged conduct occurred within the course and scope of his employment, the district court now held that the issue was subsumed within the *Faragher/Ellerth* affirmative defense, so while it may be a genuine issue, it is not material. As to the issue of Johnson's actions, the district court now determined that Johnson's five-month delay between the last incident of harassment and her report of the harassment was unreasonable. In so ruling, the district court held that Johnson mistakenly believed that Friis had changed her grade from an "I" to an "F," and that this belief prompted her to report the harassment. Johnson herself notes that that once she received the "F" she had nothing left to lose. The district court found this mistake, coupled with the delay in reporting, to be a factual basis supporting NIC's affirmative defense. Additionally, the district court held that Johnson "has failed to put into the record now admissible evidence or evidence by which a jury could reasonably find that she reasonably delayed in reporting or that her reason for not reporting was a good one." The district court then exercised what it called "its gatekeeper

7

function to the evidence . . . to diminish the likelihood of a jury coming back with a verdict that really is contrary to pronouncements of law that have analyzed Title VII."[2]

> b. *The Faragher/Ellerth affirmative defense.*

NIC's affirmative defense, named after the U.S. Supreme Court's holdings in *Faragher v. City of Boca Raton* and *Burlington Industries v. Ellerth*, provides an employer a defense to claims of *respondeat superior* liability for sexual harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 764 (1998). In *Faragher*, which dealt with a sexual harassment claim under Title VII, the U.S. Supreme Court articulated an affirmative defense for employers subject to vicarious liability.

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807. The Court also provided direction on what the two elements would entail.

> While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Faragher*, 524 U.S. at 807–08.

Here, the district court determined that there was no genuine issue of material fact regarding NIC's affirmative defense. Johnson disagrees, and argues that there remains a material

---

[2] This is not the standard for summary judgment. Idaho Rule of Civil Procedure 56(c) states in pertinent part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

issue of fact such that a rational trier of fact could reasonably find that NIC did not exercise reasonable care in preventing and promptly correcting Friis' behavior, the first element of the affirmative defense. In support, Johnson cites evidence of previous incidents involving other students that should have placed NIC on notice. These incidents include a complaint that Friis had invaded a student's personal space and that a classmate of Johnson's, Michelle Cook, was also subject to Friis' advances. Additionally, Johnson cites an incident in which Friis inappropriately touched a female student in April 2005 while NIC's investigation was ongoing.

In response, NIC first argues that it took reasonable care to prevent harassment by implementing an anti-harassment policy and complaint procedure. NIC provided sexual harassment training to all faculty and staff, and included the procedure in the student handbook, which is available to all students. Johnson does not contend that NIC failed to provide information to students as to when and how incidents of harassment should be reported. In addition to a well established and disseminated procedure, NIC argues that it took reasonable care to promptly correct issues with Friis. NIC points out that in 2004, after receiving an allegation that Friis invaded the personal space of a student, NIC warned Friis and required him to attend sensitivity training. According to NIC, this incident serves as proof that NIC takes allegations of harassment seriously, even in circumstances that NIC does not determine to be harassment. Additionally, at oral argument Johnson's counsel noted that this was not an incident of sexual harassment. As for the other allegations, Michelle Cook did not give NIC any notice of Friis' behavior, and the April 2005 incident took place after NIC Johnson's alleged harassment had ended, so it could not be the basis for prior notice.

NIC also argues that its response to Johnson's allegations provides an even better example of the school's policies and practices. Soon after Johnson made her formal complaint to her academic counselor, Judy Bundy, NIC put its procedures into motion. Bundy relayed the complaint to Brenda Smith, the NIC official designated by NIC to receive sexual harassment complaints. Smith met with Johnson and convened the Sexual Harassment Advisory Committee to investigate the allegations. The Committee interviewed the parties involved and reviewed the evidence, ultimately issuing a nine-page decision of findings. The Committee's decision recommended that NIC's president should issue the strongest possible sanction. Friis was subsequently given the option of resignation or termination, and he chose to resign.

From the facts in the record, it seems clear that NIC promulgated a sexual harassment policy aimed at preventing harassment. It seems equally clear that NIC acted swiftly and decisively once they were informed of Friis' behavior. Given these specific facts, Johnson's allegations that NIC should have already been aware of Friis' behavior are without merit. Prior to her formal complaint, Johnson had only mentioned to NIC officials that Friis made her uncomfortable.[3] Therefore NIC has satisfied the first element of the affirmative defense.

On the second element of the defense, the district court found that Johnson's five-month delay in reporting was unreasonable. In support, the district court cited *Baldwin v. Blue Cross/Blue Shield of Alabama*, where the Eleventh Circuit held that just over three months was an unreasonable delay in reporting. 480 F.3d 1287, 1307 (11th Cir. 2007) (The plaintiff "waited too long to complain. Her complaint came three months and two weeks after the first proposition incident and three months and one week after the second one. That is anything but prompt, early, or soon."). Johnson argues that the cited case, and those like it, deal with situations that only contain a bare fear of retaliation, and that other federal cases excuse a reporting delay when there is a credible threat of retaliation. Johnson relies on *Mota v. University of Texas Houston Health Science Center*, where a plaintiff filed a sexual harassment suit against a professor. 261 F.3d 512 (5th Cir. 2001). In *Mota*, the plaintiff waited eight months after the last incident of harassment before filing a formal complaint. *Id*. at 525. However, in *Mota*, the professor made veiled threats about Mota's immigration status and regularly admonished Mota not to tell anyone of the sexual advances. *Id*. at 516. This is inapposite to the circumstances in the present case. Here, the district court found, and at oral argument Johnson's counsel confirmed, that Friis did not threaten Johnson in that way, nor suggest that he would retaliate against her.

In its oral judgment, the district court held "[t]hat absent extreme circumstances creating a substantial and specific threat of retaliation, a generalized fear of retaliation for reporting sexual harassment does not constitute a valid basis for not reporting that sexual harassment."

However, Johnson argues that the issue of reasonableness is one of fact, and that a rational trier of fact could find that Johnson did not unreasonably fail to take advantage of

---

[3] According to her deposition, shortly after the Spring 2001 semester Johnson told her academic counselor Judy Bundy that Friis made her uncomfortable.

> A. I just remember I said that I was feeling very uncomfortable in his class, and I just felt uncomfortable with him, and that's – nothing else was said or done. She didn't say anything and –
> Q. She didn't follow up and say, why do you feel uncomfortable or anything like that?
> A. Not that I recall.

corrective opportunities. In support, Johnson cites her own affidavit, which demonstrates her understanding that she would be required to take Friis' class as a prerequisite for graduation. In the affidavit, Johnson also notes that she was afraid to approach Friis about class work, and even avoided seeking assistance from other instructors for fear of running into Friis. Johnson also states that Friis began leaving phone messages that had nothing to do with school.

In response, NIC argues that if Johnson took timely advantage of NIC's reporting procedures, the affirmative defense would be unavailable. But since Johnson waited for over five months before filing a complaint, the delay was unreasonable.

From a review of the record, it appears that the district court correctly identified the facts. In Johnson's deposition, she mentions a general fear of upsetting Friis, but she does not mention any specific threats or comments from Friis that would support that conclusion. Absent a tangible fear of retaliation, a five month delay in reporting deprived NIC an opportunity to correct Friis' behavior. "Although Title VII seeks to make persons whole for injuries suffered on account of unlawful employment discrimination, its primary objective, like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm." *Faragher*, 524 U.S. at 805–06 (internal citations and quotations omitted). An unreasonable delay in reporting frustrates that objective.

The district court determined that the reasonableness of the delay was not a fact for a jury, but rather a matter of law, and the delay was unreasonable. "A generalized fear of retaliation does not excuse a failure to report sexual harassment." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267 (4th Cir. 2001).

However, all of the federal opinions cited by the district court were written in the context of F.R.C.P. 50(a), which allows a court to rule on an issue if the "court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." The Idaho Rules of Civil Procedure contain no parallel rule and we follow I.R.C.P. Rule 56(c) only. Idaho Rule of Civil Procedure 56 (c) states in pertinent part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.

11

> Instead, the nonmoving party must respond to the summary judgment motion with specific facts showing there is a genuine issue for trial.

*Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009) (internal citation omitted). "A material fact is one upon which the outcome of the case may be different." *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998). As to judgment as a matter of law, we analogize to this Court's opinions in the area of negligence and foreseeability. "Only when reasonable minds could come to but one conclusion as to whether the Appellant's injury was reasonably foreseeable may the judge decide this legal responsibility issue as a matter of law." *Hayes v. Union Pac. R. Co.*, 143 Idaho 204, 208, 141 P.3d 1073, 1077 (2006); *see also Cramer v. Slater*, 146 Idaho 868, 875, 204 P.3d 508, 515 (2009).

In light of the facts in this case, it appears that there is only one reasonable conclusion of whether Johnson's delay was unreasonable in this context. Most importantly, the delay was not five months long, but rather several years after the first incident. Given the facts, this circumstance is distinguishable from a long-term yet steadily intensifying harassment. Here, there was an extended time frame in which Friis and Johnson had no contact or communication. If the delay was only five months, reasonable minds might differ on whether the power dynamic between teacher and student would be enough to justify such a delay. However, on these facts, and the assertion at oral argument from Johnson's counsel that no explicit threats or retaliation occurred, we find that the district court did not err in holding that Johnson's reporting delay was unreasonable.

### c. *Whether there was any adverse action taken against Johnson.*

Johnson also argues that she was the victim of adverse action, which would make the *Faragher/Ellerth* defense unavailable to NIC. As stated in *Faragher*, the affirmative defense is unavailable "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." 524 U.S. at 808. Johnson alleges that there is sufficient factual support for a rational trier of fact to find that she perceived the change in her grade as adverse educational action. Additionally, Johnson argues that once the grade was changed there was no further threat of adverse action. This would presumably provide Johnson with the opportunity to come forward without concern for further reprisal. In her reply brief, Johnson also advances the idea that Friis' behavior made it impossible for Johnson to complete the course, akin to a "constructive discharge" in an employment context.

12

NIC argues that Johnson is mistaken in her belief that her grade was changed in retaliation. On the contrary, NIC notes that Friis actually violated school policy in Johnson's favor by making the grade an "I" in the first place. Friis should have given Johnson an "F" when she dropped out of the class mid-semester, but regardless, school policy required her to finish the missing class work before October 2004 to avoid a failing grade. Brenda Smith's affidavit states that the grade should have been an "F" to begin with and was changed because of NIC's incomplete grade policy. In her deposition, Johnson acknowledges that her initial understanding of the grade change was mistaken:

> Q. Do you believe that Mr. Friis retaliated against you because you didn't give into his advances or requests?
>
> A. I did at the time.
>
> . . .
>
> Q. Has anything come to your attention that would make you believe or that would suggest that it wasn't Mr. Friis who changed your grade from an incomplete to an F?
>
> A. Yes.
>
> Q. And what was that?
>
> A. That – I guess there was a – I haven't read it, but you have to do the work within a certain amount of time or something like that.

The district court also found that Johnson mistakenly believed that Friis had changed her grade and that "[i]t was only then that she reported the harassment."

Johnson's initial mistaken perception is not enough to create a genuine issue of material fact. As evidenced by her own testimony, Friis did not change her grade from an "I" to an "F." Though Friis violated school policy, it does not appear that he engaged in an adverse educational action against Johnson. Absent such an action, the *Faragher/Ellerth* affirmative defense is available to NIC.

### III. CONCLUSION

We find that the district court properly granted NIC's Motion for Reconsideration. We also find that the district court did not err in finding that no genuine issue of material fact exists in regard to Johnson's reasons for delay in reporting. The opinion of the district court is therefore affirmed. Costs to NIC.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**

13