EISMANN, Justice.
This is an appeal from a judgment holding that an individual had personal liability on a contract to obtain goods and services for a limited liability company. We affirm the' judgment of the district court.
I. FACTS AND PROCEDURAL HISTORY
In early 2000, Clair Bosen and Ron Achs, together with their spouses, purchased 5,100 acres of farm property in Cassia County, Idaho. Shortly after that purchase, Achs formed Hogs ‘N Kisses, LLC, a limited liability company, to operate a hog farm enterprise on the property.
On March 15, 2000, Clair D. Bosen completed and executed a form entitled “Commercial Sales Agreement” with Soilbuilder Financial Services, Inc., in order to obtain services and products for chemical and fertilizer applications to the farm property. In completing the Sales Agreement, Bosen wrote that the “Customer Account Name” was “Hogs ‘N Kisses, LLC,” and he checked the box designated “LLC” to indicate the “Type of Ownership.” When listing the “Principals Names & Titles” he wrote “Ron Achs” and “Clair Bosen.” The form had a box entitled “Acres Owned” and a box entitled “Acres Leased.” Bosen did not write anything in the box entitled “Acres Leased,” but he wrote “5100” in the box entitled “Acres Owned.” The LLC did not own any real property, so the 5,100 acres could only refer to the real property that Bosen and his wife had purchased with Achs and his wife.
At the bottom of the Sales Agreement form was a paragraph entitled “Agricultural Business Agreement.” The first paragraph of that section stated as follows:
Applicant agrees to pay the total amount due on each invoiee/customer statement in accordance with the payment terms thereon, unless otherwise agreed in writing. Failure to pay when due (according to approved terms) will result in the addition *613 of a service charge each month at the highest rate allowed by law. Applicant agrees to pay such service charge and all additional costs incurred by Soilbuilders Financial Services, Inc., in collecting payments due, including attorney’s fees for litigation or bankruptcy.
The form does not state whether the Applicant is also the Customer. In the box for “Applicant’s Signature,” Bosen wrote “Clair D. Bosen,” without indicating that he was signing in a representative capacity.
In order to obtain an extension of credit, Bosen executed a Security Agreement and a Financing Statement. The Security Agreement granted Simplot a security interest in all crops grown on the real property. “Hogs N Kisses, LLC” and “Clair D. Bosen” were each listed as a debtor on both the Security Agreement and on the Financing Statement, and Bosen signed both documents “Clair D. Bosen,” without indicating he was signing in a representative capacity.
On December 29, 2002, Simplot filed this lawsuit against Clair and Viola Bosen to recover the unpaid balance owing for goods and services provided under the Commercial Sales Agreement. It later filed an amended complaint adding Ron and Amy Achs as defendants. The Bosens and Simplot moved for summary judgment. On October 6, 2004, the district court issued its memorandum opinion and order granting Simplot’s motion and denying the Bosens’ motion. The Bosens then filed a motion for reconsideration, which the district court denied by its memorandum decision and order issued on March 2, 2005. The Achs had also moved for summary judgment, which the district court granted.
The district court entered a judgment in favor of the Achs, dismissing the amended complaint as to them and awarding them costs and attorney fees against Simplot in the sum of $5,925.99. It also entered a judgment in favor of Simplot against the Bosens in the sum of $70,945.53 principal, plus $33,091.08 in interest and $11,672.12 as costs and attorney fees, for a total judgment of $115,708.73. The Bosens then appealed.[1]
II. ANALYSIS
A. Is There a Genuine Issue of Material Fact?
Summary judgment can only be granted when there are no genuine issues of material fact. Read v. Harvey, 141 Idaho 497, 112 P.3d 785 (2005). The first issue is whether there are any genuine issues of material fact that would have precluded the granting of summary judgment. The Bosens contend that there are two issues of disputed fact.
First, they contend that there is a genuine issue of material fact concerning whether Bosen was a member of Hogs ‘N Kisses. Achs testified in his deposition that he was the only member of the limited liability company, but that Bosen was authorized to manage the farm operation during 2000. Bosen stated in his first affidavit, “I understood I was a member of Hogs ‘N Kisses, LLC in the year 2000.” He argues that this disputed fact is material because “he would have no liability to Simplot under the Commercial Sales Agreement as member of the limited liability company.” He relies upon Idaho Code § 53-619[2] to support that argument. That statute does not grant immunity to members of limited liability companies. It merely provides that they are not liable for debts of the limited liability company “solely by reason of being a member.” The district court did not hold Bosen liable because he was a member of Hogs ‘N Kisses. It found *614 that he had personally incurred a debt for goods and services provided to the limited liability company. Whether or not Bosen was a member of the limited liability company is immaterial to the issue of whether he had personally incurred the debt.
The second alleged issue of material fact is based upon Bosen’s statement in his first affidavit that he signed the Commercial Sales Agreement on behalf of Hogs ‘N Kisses and that “I did not, at any time, enter into an agreement with Plaintiff, as an individual, for the delivery of any fertilizer or other goods or services to the Cassia County property.” In his second affidavit, he also stated, “At no time did I intend or agree to be personally liable or to guarantee the Hogs N’ Kisses, LLC account with J.R. Simplot Company.” Bosen’s statement that he did not enter into an agreement with Simplot or intend to be liable on the Hogs ‘N Kisses account does not create an issue of material fact.
If the provisions of a contract are ambiguous, the interpretation of those provisions is a question of fact which focuses upon the intent of the parties. Bream v. Benscoter, 139 Idaho 364, 79 P.3d 723 (2003). The determination of the parties’ intent is to be determined by looking at the contract as a whole, the language used in the document, the circumstances under which it was made, the objective and purpose of the particular provision, and any construction placed upon it by the contracting parties as shown by their conduct or dealings. Rameo v. H-K Contractors, Inc., 118 Idaho 108, 794 P.2d 1381 (1990); International Eng’g Co., Inc. v. Daum Indus., Inc., 102 Idaho 363, 630 P.2d 155 (1981). A party’s subjective, undisclosed intent is immaterial to the interpretation of a contract. As explained in 17 Am.Jur.2d, Contracts, § 347 (2004):
A party’s subjective, undisclosed intent is immaterial to the interpretation of a contract, as under the objective law of contract interpretation, the court will give force and effect to the words of the contract without regard to what the parties to the contract thought it meant or what they actually intended for it to mean. The court will not attempt to ascertain the actual mental processes of the parties in entering into the particular contract; rather the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest.
In this case, Bosen does not contend he ever verbalized to any of Simplot’s agents his intent not to be personally obligated under the contract. His subjective intent or belief does not create a genuine issue of material fact.
The Bosens also argue that there is an issue regarding the credibility of Brian Davis, a Simplot representative, based upon two statements made by Davis. The first statement was that Bosen signed the Commercial Sales Agreement in the presence of Davis, and the second was that Davis spoke with Bosen about obtaining a lien on the barley crop.
In his affidavit submitted in opposition to the Bosens’ motion for summary judgment, Davis stated, “That I met with Clair Bosen personally when the documents were signed and the documents were signed in my presence.” Bosen then deposed Davis, and he admitted that he did not recall whether Bosen signed the Commercial Sales Agreement in his presence. The affidavits of Bosen and Kurt Olson, a Hogs ‘N Kisses employee, show that a Simplot employee brought the Agreement to the farm’s office, that Olson faxed it to Bosen, and that Bosen completed and signed it and faxed it back.
Davis also testified in his deposition that he did not recall talking with anyone other than Bosen concerning Hogs ‘N Kisses and that he discussed the crop lien with Bosen. Kurt Olson’s responsibilities as an employee of Hogs ‘N Kisses included setting up accounts for goods and services. He stated in his affidavit and in his deposition that he talked with Davis about purchasing fertilizer on credit for Hogs ‘N Kisses, that Davis required a crop lien to extend credit, and that he told Davis that Simplot could have a lien on the barley crop as security for the transaction. The Bosens argue that the record shows that Davis did not remember his conversation with Olson and that Davis wrongly stated that his conversation about obtaining a lien on the barley crop was with *615 Bosen, when it was in fact with Olson. The Bosens have not pointed to any place in the record where Bosen denied also discussing the crop lien with Davis. They simply argue that because Olson discussed the crop lien with Davis, Bosen must not have done so.
“Summary judgment is not proper where the depositions and affidavits raise any question as to the credibility of witnesses.” Athay v. Stacey, 142 Idaho 360, 367, 128 P.3d 897, 905 (2005). That rule only applies, however, if the testimony of the witness is material. The district court did not rely upon any of Davis’s testimony in granting summary judgment, nor has Bosen contended that any of Davis’s testimony, if believed, would preclude summary judgment. Therefore, the issue of Davis’s credibility is not material to the summary judgment.
B. Does the Record Reasonably Support the Trial Court’s Findings as to the Reasonable Inferences to be Drawn from the Facts?
In this case, neither party requested a jury trial. “When an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences.” Shawver v. Huckleberry Estates, L.L.C., 140 Idaho 354, 360-61, 93 P.3d 685, 691-92 (2004). “The test for reviewing the inferences drawn by the trial court is whether the record reasonably supports the inferences.” Id.
In its memorandum decision, the district court stated that the three documents signed by Bosen were unambiguous and that it did not have to consider extrinsic evidence. In its decision, however, it considered extrinsic evidence. It also recognized that when a case is to be tried to the court without a jury, the court can resolve conflicting inferences to be drawn from the undisputed facts. Therefore, we will review the court’s conclusions to determine whether the record reasonably supports the inferences drawn by the court.
Bosen filled out and signed the Commercial Sales Agreement. At the top of the Commercial Sales Agreement is a blank for inserting “Customer Account Name.” Bosen wrote “Hogs ‘N’ Kisses LLC.” in that blank. At the bottom of the document is a paragraph entitled “Agricultural Business Agreement” under which the “Applicant agrees to pay the total amount due on each invoice/customer statement in accordance with the payment terms thereon, unless otherwise agreed in writing.” The only signature space on the document is for the Applicant. The document does not define the Applicant as being the Customer. Bosen signed as the Applicant without designating that he was signing in a representative capacity. The document could be read as Bosen signing in his individual capacity as Applicant or in a representative capacity as an agent of Hogs ‘N Kisses. When deciding whether Bosen signed in his individual capacity or in a representative capacity, the district court considered various other facts.
The court considered the Security Agreement and Financing Statement signed by Bosen, which were executed to provide security for the debt that would be created by extending credit under the Commercial Sales Agreement. "When initially discussing the transaction, Olson had told the Simplot representative that Simplot could have a security agreement in the barley crop. Bosen did not sign the Security Agreement and Financing Statement, however, until after he had signed the Commercial Sales Agreement. The debtor identified in the Security Agreement was “Hogs N Kisses, LLC, Clair D. Bosen.” The district court interpreted this as indicating that both were debtors. The Financing Statement executed at the same time listed “Hogs N Kisses, LLC” as one debtor and “Bosen, Clair D.” as the second debtor. Bosen signed both documents “Clair D. Bosen” without indicating he was signing in a representative capacity. The district court inferred that by doing so, “Clair Bosen had to realize that Simplot considered him a debtor.” He would only be a debtor in this transaction if he was personally obligated under the Commercial Sales Agreement.
*616 In his second affidavit, Bosen stated that he had been involved in farming and ranching for forty years and during that time had engaged in business as a sole proprietor, a partner in a partnership, a shareholder in a corporation, and a member of a limited liability company. The district court noted that with that experience Bosen “Med out the agreement with a strong knowledge and background of normal business practices.” The court also considered that when Ming out the Commercial Sales Agreement, Bosen wrote that the acres owned were 5,100 and that Hogs ‘N Kisses did not own any land. The district court concluded that Bosen “signed the Commercial Sales Agreement in his own name and as owner of 5,100 acres.”
The court also stated that any ambiguity created by the manner in which Bosen Med out and signed the Commercial Sales Agreement should be construed against him. The district court did not err in doing so. “The rule is clear, that a contract should be construed most strongly against the party preparing it or employing the words concerning which doubt arises.” Big Butte Ranch, Inc. v. Grasmick, 91 Idaho 6, 9, 415 P.2d 48, 51 (1966). Stated another way, “Where there is doubtful language in a contract, it will be interpreted most strongly against the party who provided that language.” Werry v. Phillips Petroleum Co., 97 Idaho 130, 136, 540 P.2d 792, 798 (1975).
Bosen pointed out that Simplot had never asked him to sign a personal guaranty. He argues that had Simplot wanted him to be personally hable, it would have asked for such a guaranty. The district court considered that fact and did not find the inferences to be drawn from it persuasive.
In deciding what inferences to draw from the undisputed facts, the district court made various factual findings based upon those inferences. Because the district court was the trier of fact, we must uphold those findings if they are reasonably supported in the record. We cannot conclude that the district court’s conclusions are not reasonably supported in the record. We therefore affirm the judgment of the district court.
Part I of the dissent explains the result it would have reached as the trier of fact. In doing so, the dissent relies upon some of the deposition testimony of Simplot’s agent Brian Davis to conclude that Simplot was looking solely to the barley crop for repayment. There was other testimony of Davis in which he testified he was not looking solely to the barley crop for repayment. Davis’s deposition testimony included the following:
Q. Did you convey, and I’m not asking for your reconstruction. I’m asking for what you actually know. Did you convey to Mr. Bosen at the time that you collected the commercial sales agreement that you expected him to pay for any amount of the Hogs N Kisses’ bill that was not paid by Hogs N Kisses and the crops?
A. I don’t recall specifically saying that.
Q. Did you say anything like that to him?
A. Yes. Mr. Bosen was responsible for the bill. There was no misunderstanding about that.
Q. How did you say that to him?
A. I don’t recall specifically. I know that we would have had to have that conversation for me to go forward with his signature on the security documents.
Q. If you had that conversation that extended beyond the security documents, then why didn’t you have a personal guarantee?
A. Because I didn’t need it.
Q. Why didn’t you need it?
A. Because I had a lien on the crops.
Q. My question, sir, was beyond the crops.
A. I didn’t feel — I felt that since that farm was a very large farm and it was going to be planted in barley, there was no need for anything beyond the crops.
Q. Okay. So you really never even considered the necessity for Mr. Bosen to personally pay the debt to Simplot because you thought the crops were going to be adequate, didn’t you?
MR. HARRIS: Objection. Mischaracterizes his prior testimony.
MR. LOMBARDI: It’s not a valid objection. You can answer. Go ahead.
*617 THE WITNESS: I’m sorry. I think I got lost in the question again. I did consider Mr. Bosen to be responsible for this bill, yes.
Q. (BY MR. LOMBARDI) But you never told him that, did you?
A. Yes, I did.
Q. Because if you had told him that, you would have asked him to sign a personal guarantee.
A. Why do you make that assumption? That’s not true.
Q. Because the—
A. We do business with — we have done business with all kinds of customers that we darn sure make them understand that they’re responsible to pay that bill.
Q. But you don’t recall specifically saying that to Mr. Bosen, do you?
A. I don’t recall the specific words I used.
Q. Okay. And all you recall — well, you don’t recall anything. It’s just you think that you would have said that to him; correct?
A. I’m certain that I said that to him.
Q. Okay.
A. I’m certain that Mr. Bosen understood from me that he was responsible for this bill.
Q. How are you certain? What makes you certain?
A. Because of the conversation we had.
Q. And the conversation was what?
A. That Mr. Bosen was going to pay the bill.
Q. You had that conversation with him and he said those words?
A. We had the conversation. I don’t know. I don’t recall what words Mr. Bosen said to me.
Q. And you don’t recall what words you said to him?
A. There was no misunderstanding between Mr. Bosen and me as to who was going to pay this bill.
Part II of the dissent addresses issues and supporting arguments it would have presented on appeal on behalf of the Bosens. The Bosens, however, did not raise those issues on appeal.
C. Is Either Party Entitled to an Award of Attorney Fees on Appeal?
Simplot seeks an award of attorney fees on appeal pursuant to Idaho Code § 12-120(3). It argues that a commercial transaction is the gravamen of this lawsuit. The Bosens agree. Because this is an action to recover on a commercial transaction and Simplot is the prevailing party on appeal, it is entitled to an award of attorney fees pursuant to Idaho Code § 12-120(3).
The Bosens also seek an award of attorney fees on appeal pursuant to Idaho Code § 12-120(3). Since they are not the prevailing party in this lawsuit, they are not entitled to an award of attorney fees under that statute.
III. CONCLUSION
We affirm the judgment of the district court and award the respondent costs and reasonable attorney fees on appeal.
Chief Justice SCHROEDER, and Justices TROUT and BURDICK concur.

. The Bosens have not challenged on appeal the finding of personal liability against Viola Bosen that was apparently based solely upon the fact she was married to Clair Bosen. See Twin Falls Bank & Trust Co. v. Holley, 111 Idaho 349, 352, 723 P.2d 893, 896 (1986) ("To the extent a lending institution enters into a creditor-debtor relationship with either member of the marital community or with both members, it does so on a purely individual basis”).

. That statute provides:
A person who is a member of a limited liability company is not liable, solely by reason of being a member, under a judgment, decree or order of a court, or in any other manner, for a debt, obligation or liability of the limited liability company, whether arising in contract, tort or otherwise or for the acts or omissions of any other member, manager, agent or employee of the limited liability company.