# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50039

GREGORY L. KELSO, as Personal Representative of the Estate of Karon Kelso, )
)
Plaintiff-Appellant, )
)
v. )
)
LINDA APPLINGTON, )
)
Defendant-Respondent. )

Boise, January 2024 Term

Opinion filed: May 8, 2024

Melanie Gagnepain, Clerk

Appeal from the District Court of the Second Judicial District of the State of Idaho, Clearwater County. Gregory FitzMaurice, District Judge.

The judgment of the district court is reversed and remanded.

Silvey Law Office, Ltd., Boise, for Appellant Gregory L. Kelso. Greg Silvey argued.

Blewett Mushlitz Hally, LLP, Lewiston, for Respondent Linda Applington. Jonathan Hally argued.

---

MOELLER, Justice.

This appeal concerns a dispute over the ownership of funds in a joint checking account following the death of one of the parties named on the account. Karon "Kelly" Kelso (hereinafter "Kelly")[1] was originally a joint owner of a checking account with his wife, Sandra Kelso. After Sandra died in 2017, Linda Applington ("Linda"), a friend of Kelly's, began helping Kelly process his monthly bills. In March 2018, Kelly executed a will, leaving his entire estate to his son, Greg Kelso ("Greg"). Around fourteen months later, Kelly added Linda on his checking account as a joint owner with the right of survivorship. Kelly died in July 2020. Thereafter, his son, Greg, became the personal representative and sole heir of Kelly's estate.

---

[1] As noted in the complaint, Karon Kelso was "commonly known" as "Kelly," and he is referred to that way throughout the record. To avoid confusion between Karon Kelso and his son, Greg Kelso, they will each be referred to as "Kelly" and "Greg" throughout this opinion. For consistency, the other major players in this case will also be referred to by their first names. No disrespect is intended by this departure from formality.

Greg contacted Linda and sought to have the funds transferred to Kelly's estate. Upon learning for the first time how the account was arranged, Linda claimed ownership of the account under the right of survivorship and declined to transfer the funds to Kelly's estate. Thereafter, Greg, acting as personal representative, filed a multi-count complaint against Linda, including a claim to invalidate the gift under Idaho Code section 15-6-104 for lack of donative intent and other equitable claims (such as undue influence, fraud, breach of fiduciary duty, and quasi estoppel). Linda moved for summary judgment. Greg later conceded that there were no facts in the record to support the Estate's equitable claims but argued that there remained a genuine issue of material fact as to donative intent, as required by Idaho Code section 15-6-104. The district court disagreed and granted summary judgment in favor of Linda.

Greg timely appealed to this Court. For the reasons explained below, we reverse the district court's grant of summary judgment and remand for a jury trial. Additionally, we vacate the award of attorney fees below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kelly owned a joint checking account with his wife, Sandra. Sandra had long handled the financial affairs for the couple before she died in 2017. After Sandra's death, Kelly sought help from Linda to pay the monthly bills. Linda agreed to help Kelly and continued helping for the remainder of his life, until he passed away on July 30, 2020.

While it is undisputed that there was a previous friendship between the Applington and the Kelso families, there appears to be a dispute between the parties as to how to characterize the relationship between Kelly and Linda. As noted by the district court, "[Linda] asserts that she and her husband were close friends to [Kelly] and his wife."[2] Linda characterized herself as a "longtime friend" of Kelly. She testified that her husband, Gene, had known Kelly "for approximately sixty-seven (67) years." Linda also explained that she "met [Kelly Kelso] in 1980" and maintained a friendship with Kelly since then. This is supported by deposition testimony in the record.

Greg presented conflicting evidence of the relationship. While Linda characterized the relationship with Kelly as being a "longtime friend," Greg testified that Linda "wasn't that close to my family." Greg stated he was friends with Gene Applington and conceded that both his father and mother were friends with Gene. However, he maintained that he did not believe that his father

---

[2] As reflected by the deposition testimony of Gene Applington, Linda Applington's husband, Gene explained that he was a distant relative to Kelly's wife, Sandra: "My grandmother and Sandra's . . . grandmother . . . were sisters . . . ." Thus, Gene and Sandra were second cousins.

2

and Linda were friends. He claimed that although his father knew Linda as Gene's wife, they did not share a personal friendship. Regardless of how we define the relationship, it is undisputed that Linda began helping Kelly process his bills after Sandra's death in 2017.

In March 2018, Kelly executed his last will and testament. As alleged in the complaint: "[Kelly] executed a will leaving his entire estate to [Greg]. On that same date [Kelly] executed a power of attorney naming [Greg] as [Kelly's] agent for his financial affairs." Neither the will nor the power of attorney is in the record on appeal.

On May 6, 2019, Linda's name was added on Kelly's checking account at Banner Bank. She was designated as a "joint owner with the right of survivorship." The addition of Linda as a joint owner took place more than a year after Kelly executed his estate planning documents. Although Greg apparently had power of attorney for his father's financial affairs, he was not made aware of the change in the account. As explained by the district court, there was conflicting testimony concerning how Linda was added to the account:

> On May 6, 2019, [Linda] became a joint owner with right of survivorship on [Kelly]'s Banner Bank account. Testimony conflicts as to how this occurred. [Linda] testified that she went into the Banner Bank in Orofino and signed the master signature card for [Kelly's] account. Janet Overman, the bank employee who handled the transaction, testified that [Linda] signed the card outside her presence and [Kelly] brought the signed card to her.

(Citations omitted). As referenced by the district court, Linda testified in her deposition that she originally understood that Kelly added her to the account for only a limited purpose:

> Q.  Okay. So your belief at that point was that [Kelly] was just adding you as a signor [sic]?
> A.  Absolutely. Yes.

Kelly passed away on July 30, 2020. In the course of administering his father's estate, Greg attempted to have the funds from the Banner Bank checking account, totaling approximately $140,000, transferred to Kelly's estate.[3] Both Greg and Linda were then informed by Banner Bank personnel that the account designated Linda as a joint owner with the right of survivorship. Thereafter, Linda declined Greg's request to transfer the funds in the account to Kelly's estate. The parties disagreed on why Linda was added to the account. Greg asserted that Linda was added for banking convenience related to the help she was providing Kelly with his bills, while Linda

---

[3] While this is not in the district court's order or in the complaint, the memorandum of costs and affidavit of attorney fees submitted by counsel for Linda states this is the amount in controversy. Notably, it does not indicate whether this is an interest-bearing account or if the bank is currently charging any fees on the account.

later maintained that she was added for the express purpose of making her a joint owner with the right of survivorship.

Greg filed a multi-count complaint against Linda, including: (1) a claim that the gift of the account under a right of survivorship failed for lack of donative intent under Idaho Code section 15-6-104(a), which requires the person claiming the gift to show by clear and convincing evidence the donor's intent to give the account; and (2) other equitable claims for undue influence, fraud, breach of fiduciary duty, and quasi estoppel. Linda answered and demanded a trial by jury.[4] The district court summarized the dispute as follows:

> [Greg] alleges that [Linda] acted as a fiduciary to [Kelly], and breached her fiduciary duty and fraudulently convinced his father to place funds from his accounts in Wells Fargo and U.S. Bank into the account at Banner Bank and then tricked [Kelly] into making [Linda] a joint owner of the account. He alleges that the funds in the Banner Bank account belong to [Kelly's] estate.
>
> [Linda] alleges that Karon [Kelly] Kelso intended to gift funds remaining in his bank account to her at his death. She maintains that [Greg] has not shown that [Linda] committed fraud, a breach of fiduciary duty or quasi-estoppel as he has alleged.

Following discovery, Linda moved for summary judgment. Greg "conceded there were no facts supporting the equitable claims"; however, he still "defended his § 15-6-104(a) claim[,]" arguing that there was a genuine dispute whether Kelly had the requisite donative intent.

The district court issued a written decision granting summary judgment on the equitable claims to Linda. Greg does not challenge this decision on appeal. The district court then addressed Kelly's section 15-6-104(a) claim, focusing on the clear and convincing evidence standard, the donative intent requirement, and the testimony of the bank employee who worked with Kelly to add Linda to the account, Janet Overman ("Overman"). Notably, while the testimony from Linda and Overman diverged on certain points, the district court ultimately found those points of conflict immaterial. The district court explained:

> Gregory [Greg] Kelso argues that the evidence presented is not clear and convincing. He notes that [Linda] testified that [Kelly] wanted her name on the account so that she would be able to pay his bills if he became unable to do so. *Declaration of William Jeremy Carr*, Ex. B, Deposition of Applington, p. 13-14. Citing *In re Chase's Est.*, 82 Idaho 1, 8, 848 P.2d 473, 477 (1960), Greg Kelso asserts that the account was established for convenience reasons, so there is no right of survivorship.

---

[4] Greg requested a jury trial in his amended complaint.

4

Greg Kelso also points to conflicting testimony regarding where [Linda] signed the signature card. [Linda] testified that she signed the card in the bank, while Overman testified that [Kelly] took the card to [Linda] and he brought the signed card back to the bank. He also points to conflicting testimony regarding whether [Linda] was ever at the bank when Overman was discussing the different types of accounts with [Kelly]. These credibility issues, Greg Kelso asserts, make summary judgment improper.

These two factual issues are not material. There is no dispute that the card bears the signature[s] of both [Kelly] and [Linda]. There is no allegation that either signature was forged. How the signatures were obtained is not a material fact.

At issue here is the donative intent of [Kelly]. What [Linda] knew or whether she was present for any discussion between [Kelly] and Overman is not a material fact that bears on the outcome of this matter.

The [c]ourt finds that there is clear and convincing evidence that [Kelly] intended [Linda] to have the funds in his account upon his death. There is no issue about [Kelly's] competency. Although Greg Kelso was somewhat equivocal in his answer, he testified that [Kelly] knew what was going on and was capable of handling his affairs.

Having found that there was "clear and convincing evidence that [Kelly] intended Linda to have the funds in his account upon his death[,]" the district court granted summary judgment to Linda. Thereafter, the district court also awarded attorney fees to Linda under Idaho Code section 12-121. Greg timely appealed.

## II. STANDARDS OF REVIEW

We review a grant of summary judgment de novo and employ the same standard of review used by the district court in ruling on the motion for summary judgment. *United Heritage Prop. & Cas. Co. v. Zech*, 170 Idaho 764, 770, 516 P.3d 1035, 1041 (2022) (quoting *AED, Inc. v. KDC Inv., LLC*, 155 Idaho 159, 163, 307 P.3d 176, 180 (2013)). As we have consistently made clear, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 228, 494 P.3d 769, 776 (2021) (quoting I.R.C.P. 56(a)). "The moving party carries the burden of proving the absence of a genuine issue of material fact." *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Tr.*, 147 Idaho 117, 123, 206 P.3d 481, 487 (2009). "A material fact is one upon which the outcome of the case may be different." *Johnson v. N. Idaho Coll.*, 153 Idaho 58, 67, 278 P.3d 928, 937 (2012) (quoting *Peterson v. Romine,* 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998)). "All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are

to be drawn in favor of the nonmoving party." *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007). We have also explained that "[s]ummary judgment is not proper where the depositions and affidavits *raise any question as to the credibility of witnesses*." *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 615, 167 P.3d 748, 752 (2006) (emphasis added) (quoting *Athay v. Stacey,* 142 Idaho 360, 368, 128 P.3d 897, 905 (2005)).

When reviewing a discretionary decision of the district court for an abuse of that discretion, this Court determines whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

### III. ANALYSIS

This case presents an opportunity to address how summary judgment motions should be addressed when the credibility of a material witness is at issue. Greg, the nonmoving party in this case, has conceded that he has no direct evidence of Kelly's intent when adding Linda as a joint owner with right of survivorship. His case largely relies on the assertion that Linda has not carried her burden to show by clear and convincing evidence that Kelly intended to give the checking account funds to Linda. While Greg concedes he has no direct evidence of Kelly's intent, he points to the conflicting narratives from Linda and Janet Overman, an employee of the bank, as raising credibility concerns that undermine their testimonies and create genuine issues of material fact. Linda's case rests largely on her own testimony and the testimony of Overman to carry her burden to establish donative intent. We agree with Greg that because Linda's testimony and Overman's testimony diverge at several critical points, both Linda's and Overman's credibility are called into question.

We are also cognizant of the high burden on a noncontributing joint owner claiming a rightful gift under a right of survivorship. It is the party claiming the gift who must bear their burden and establish that a gift was intended. The law requires the owner claiming the gift under the right of survivorship to prove "an intent to give the account" by clear and convincing evidence. *See* I.C. § 15-6-104(a); *In re Lewis' Est.*, 97 Idaho 299, 303, 543 P.2d 852, 856 (1975). With these foundational principles in mind, we begin by addressing the district court's ruling on summary judgment.

**A. The role of credibility in summary judgment determinations.**

6

As we have long held, "[s]ummary judgment is not proper where the depositions and affidavits *raise any question as to the credibility of witnesses*. That rule only applies, however, if the testimony of the witness is material." *Bosen*, 144 Idaho at 615, 167 P.3d at 752 (emphasis added) (quoting *Athay*, 142 Idaho at 368, 128 P.3d at 905). This rule precluding summary judgment has been applied in Idaho for as long as this Court has been interpreting Rule 56 of the Idaho Rules of Civil Procedure. Indeed, the rule was first articulated by this Court over 60 years ago in *Merrill v. Duffy Reed Construction Company* when we reviewed Rule 56 for the first time and held: "[a] motion for summary judgment should be denied if the pleadings, admissions, depositions, and affidavits *raise any question of credibility of witnesses* or weight of the evidence." 82 Idaho 410, 414, 353 P.2d 657, 659 (1960) (emphasis added) (citations omitted). Thus, for as long as this Court has had the occasion to apply Rule 56, it has consistently held that summary judgment should be denied when there is any question regarding the credibility of a material witness.

Because Idaho's Rule 56 was relatively new in 1960, with no state law precedent to draw upon, our decision in *Merrill* relied heavily on federal law in support of its holding. However, today 42 states, a clear supermajority, are in agreement with Idaho's position that questions of credibility should not be resolved on summary judgment.[5] *See, e.g.*, *Doe v. Town of W. Hartford*,

---

[5] *Nix v. Franklin Cnty. Dep't of Hum. Res.*, 234 So. 3d 450, 456 (Ala. 2017); *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014); *Orme Sch. v. Reeves*, 802 P.2d 1000, 1008 (Ariz. 1990) (en banc); *People In Int. of S.N. v. S.N.*, 329 P.3d 276, 281 (Colo. 2014); *Doe v. Town of W. Hartford*, 177 A.3d 1128, 1143 (Conn. 2018); *Cerberus Int'l, Ltd. v. Apollo Mgmt.*, L.P., 794 A.2d 1141, 1150 (Del. 2002); *Crichfield v. Grand Wailea Co.*, 6 P.3d 349, 360 (Haw. 2000); *Coole v. Cent. Area Recycling*, 893 N.E.2d 303, 309 (Ill. 2008); *State ex rel. Corll v. Wabash Cir. Ct.*, 631 N.E.2d 914, 916 (Ind. 1994); *Esquivel v. Watters*, 183 P.3d 847, 850 (Kan. 2008); *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 276 (Ky. 1991); *Hines v. Garrett*, 876 So. 2d 764, 769 (La. 2004); *Hutz v. Alden*, 12 A.3d 1174, 1179 (Maine 2011); *Marcantonio v. Moen*, 959 A.2d 764, 774 (Md. 2008); *Adams v. Schneider Elec. USA*, 210 N.E.3d 917, 932 (Mass. 2023); *Price v. Austin*, 972 N.W.2d 246, 247 (mem.), (Mich 2022); *Hoyt Props. Inc. v. Prod. Res. Grp., LLC,* 736 N.W. 2d 313. 320 (Minn. 2007); *Watkins ex rel. Watkins v. Miss. Dep't of Hum. Servs.*, 132 So. 3d 1037, 1044 (Miss. 2014); *Brentwood Glass Co., Inc. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 302 (Mo. 2016) (en banc); *Mickelson v. Mont. Rail Link, Inc.*, 999 P.2d 985, 995 (Mont. 2000); *Bates v. Design of the Times, Inc.*, 622 N.W.2d 684, 687 (Neb. 2001); *Gamino v. Renown Health*, 131 Nev. 1281 (2015) (unpublished); *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 68 (N.M. 2004), *as corrected* (June 9, 2004); *Vega v. Restani Const. Corp.*, 965 N.E.2d 240, 243 (N.Y. 2012); *N. Carolina Farm Bureau Mut. Ins. Co., Inc. v. Herring*, 894 S.E.2d 709, 714 (N.C. 2023); *Great W. Cas. Co. v. Butler Mach. Co.*, 931 N.W.2d 504, 507 (N.D. 2019); *Byrd v. Smith*, 850 N.E.2d 47, 53 (Ohio 2006); *Whittington v. Durant H.M.A., LLC*, 521 P.3d 1281, 1290 (Okla. 2022) (Kuehn, J., concurring) ("However, we have held that, where an affiant is an interested party and the relevant statement is controverted, the credibility of the affiant's testimony should be submitted to the trier of fact." (citing *Poafpybitty v. Skelly Oil Co.*, 517 P.2d 432, 438 (Okla. 1973))); *Lowell v. Wright*, 512 P.3d 403, 414 (Or. 2022); *Woodford v. Ins. Dep't*, 243 A.3d 60, 70 (Penn. 2020); *Voccola v. Stop & Shop Supermarket Co., LLC*, 209 A.3d 558, 562 (R.I. 2019); *True v. Monteith*, 489 S.E.2d 615, 617 (S.C. 1997); *Carpenter v. City of Belle Fourche*, 609 N.W.2d 751, 762 (S.D. 2000); *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 895 (Tenn. 2019); *Webster v. Sill*, 675 P.2d 1170, 1172 (Utah 1983); *In re Est. of Holbrook*, 166 A.3d 595, 599 (Vt. 2017); *Bloodworth v. Ellis*, 267 S.E.2d 96, 99 (Va 1980); *Howell v. Spokane & Inland Empire Blood Bank*, 818 P.2d 1056, 1060 (Wash. 1991) (en banc); *Bowden v. Monroe*

177 A.3d 1128, 1143 (Conn. 2018) ("When deciding a summary judgment motion, a trial court may not resolve credibility questions raised by affidavits or deposition testimony submitted by the parties.") (citations omitted)); *Cerberus Int'l, Ltd. v. Apollo Mgmt.*, L.P., 794 A.2d 1141, 1150 (Del. 2002) ("If the matter depends to any material extent upon a determination of credibility, summary judgment is inappropriate."); *Ford Motor Co. v. Trejo*, 402 P.3d 649, 657 (Nev. 2017) ("[I]t is a well settled rule in this state that whenever conflicting testimony is presented, it is for the jury to determine what weight and credibility to give to that testimony." (citation omitted)).

In reviewing the jurisprudence from these 42 states, we note that some states may differ in their articulation of this rule, and some apply the rule with varying degrees of rigidity. The Idaho Supreme Court is one of only three state high courts to frame its rule so broadly that "any question of credibility" would preclude summary judgment. *See Timi v. Prescott State Bank*, 553 P.2d 315, 323 (Kan. 1976); *N.C. Farm Bureau Mut. Ins. Co. Inc. v. Herring*, 894 S.E.2d 709, 714 (N.C. 2023). As for the eight states not expressly following the majority approach, there are five states[6] where the case law is unclear, and, notably, only three states[7] where a challenge to credibility alone cannot preclude summary judgment. One such state is California, where its rule is grounded in a statute prohibiting issues of credibility alone from barring summary judgment.

It is worth noting that "[q]uestions of credibility have given the courts considerable difficulty and the courts have not been entirely harmonious in dealing with these problems."

---

*Cnty. Comm'n*, 800 S.E.2d 252, 263 (W. Va. 2017); *United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 836 N.W.2d 807, 819 (Wis. 2013); *Little Med. Creek Ranch, Inc. v. d'Elia*, 450 P.3d 222, 233 (Wyo. 2019).

[6] Florida only recently adopted the federal summary judgment standard and has yet to interpret credibility under its new rules. *See In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 77 (Fla. 2021) (per curiam), https://supremecourt.flcourts.gov/ content/download/698378/opinion/sc20-1490.pdf. It is not clear whether Georgia, Iowa, or New Hampshire would preclude summary judgment solely based on a legitimate challenge to a material witness's credibility. *See Cowart v. Widener*, 697 S.E.2d 779, 788 (Ga. 2010); *Sabinson v. Trustees of Dartmouth Coll.*, 999 A.2d 380, 387 (N.H. 2010); *Hedlund v. State*, 930 N.W.2d 707 (Iowa 2019), *as amended* (Sept. 10, 2019); *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 341 (Iowa 2020) (Appel, J., dissenting). Texas does not permit summary judgment to be granted if the motion involves a challenge to credibility, but it is not clear whether Texas permits the nonmoving party to avoid summary judgment based on such an attack. *Great Am. Rsrv. Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965) ("If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted.").

[7] *Carmichael v. Nationwide Life Ins. Co.*, 810 S.W.2d 39, 42 (Ark. 1991) ("In essence, she would have the jury consider the credibility of a witness whose testimony is uncontroverted."); *Aguilar v. Atl. Richfield Co.*, 24 P.3d 493, 512 (Cal. 2001) (" 'If' the defendants are 'otherwise entitled to a summary judgment,' as a general rule 'summary judgment' may 'not be denied on grounds of credibility or for want of cross-examination....' " (quoting Cal. Civ. Proc. Code § 437c(e)); *Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.*, 916 A.2d 440, 450 (N.J. 2007) ("Even when credibility may be an issue, '[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact.' " (alteration in original) (quoting *Brill v. Guardian Life Ins. Co. of Am.*, 666 A.2d 146, 156 (NJ 1995), holding modified by *Schneider v. Simonini*, 749 A.2d 336 (NJ 2000))).

Charles Alan Wright & Arthur R. Miller, 10A *Federal Practice and Procedure* § 2726 (4th ed. 2023) (footnote omitted). However, "[t]he general rule is that specific facts must be produced in order to put credibility in issue so as to preclude summary judgment." *Id.* (footnote omitted). As one federal district court summarized the Fourth Circuit's rule: "[S]ummary judgment under Rule 56 ... may not be invoked where, as here, the [depositions of the principal witnesses] present conflicting versions of the facts which require credibility determinations." *Nilson v. Historic Inns Grp. Ltd.*, 903 F. Supp. 905, 909 (D. Md. 1995) (alterations in original) (first citing *Davis v. Zahradnick,* 600 F.2d 458, 460 (4th Cir.1979) (per curiam); and then citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986)). The court continued: "Disposition of matters turning on credibility may only be determined by the trier of fact." *Id.* That is more than satisfied in this case. This articulation of the credibility issue on summary judgment is consistent with our own precedents, which hold that summary judgment is not proper when any question of credibility arises to a witness offering material testimony. *Bosen*, 144 Idaho at 615, 167 P.3d at 752 ("'Summary judgment is not proper where the depositions and affidavits raise any question as to the credibility of witnesses.' That rule only applies, however, if the testimony of the witness is material." (quoting *Athay*, 142 Idaho at 368, 128 P.3d at 905)).

Given the considerable weight of persuasive authority supporting our long-standing summary judgment principle, which requires denial of summary judgment when there arises any question of credibility of a material witness, we see no reason to depart from it today. Thus, if the record demonstrates that the matter turns on the reasonably challenged credibility of a material witness's testimony, summary judgment should be denied. Such questions of credibility should be resolved by the trier of fact through the crucible of trial.

**B. Summary judgment was improper here because conflicting deposition testimony calls into question the credibility of the moving party's key witnesses on a material issue.**

The central issue in this case is whether Kelly *intended* for Linda to receive the balance of the joint account on his death, or whether she was just added to the account for banking convenience in processing his monthly bills. To show donative intent in this case, Linda relies on the testimony of Overman. However, as explained below, Overman's recounting of the key events is inconsistent, if not wholly incompatible, with Linda's own deposition testimony.

For example, Linda testified that she had never had any prior conversations with Janet Overman and that she had never accompanied Kelly to the bank when the topic of putting her on the account was discussed:

Q: Had you had any prior conversations with Janet Overman?

A: [Linda] No.

Q: Had you ever accompanied Kelly to the bank when putting you on the account was discussed?

A: No.

Overman's deposition testimony directly contradicts this. Overman stated in her deposition that Linda had accompanied Kelly to the bank when adding Linda's name on the account was discussed and that Linda conversed with Overman about the account:

Q: All right. And then you said that Linda had come in with –

A: [Overman]She came in once.

Q: One time –

A: Yes.

Q: -- with Kelly?

A: Uh-huh (affirmative).

Q: And you talked with her about the account?

A: We were standing – I think that was the day I took him into -- the first day I took him into my office, because we were standing out in the lobby. And he said -- he had asked about it, and she was just standing there. *[Linda] goes, "I don't need to be on there."* And he didn't really say nothing. He just wanted to go over it, and so we went in the office, and she stayed out. She did not come in. She stayed out in the lobby. I'm trying to remember if she left. She might have left. But she definitely didn't come in with him. I took him in, and I explained. And that's what he said, but he didn't do the signature card that day. He came back.

(Emphasis added). Thus, Overman contradicts Linda on two key points: (1) whether she had spoken with Linda before and (2) whether Linda had accompanied Kelly to the bank when adding her name to the account was discussed.

In addition to these contradictions, there is conflicting testimony regarding how the signature card was executed and provided to the bank. As Overman explained in her deposition, Kelly took the signature card back with him so that he could get Linda's signature: "So I took [Kelly] in my office, and we made up the new signature card and he took it with him, and then he brought it back a couple weeks later with [Linda's] signature on it." Yet, Linda testified that Kelly told her she needed to sign something at the bank so she went to the bank to sign the signature card:

A: [Linda] Again, Kelly stopped at our house. I was working. He told Gene [Applington] I have a signature card at the bank. Linda [Applington] needs to go

down and sign the card and take her driver's license, and so a few days after that I was in Orofino again. *I went into Banner Bank, met with Janet Overman, signed the signature card.*

(Emphasis added). Thus, the testimony diverges on at least three key points: (1) whether Linda and Overman had spoken previously about Kelly's account, (2) whether Linda was present when Overman and Kelly spoke about putting Linda on the signature card, and (3) how Kelly went about having the signature card fully executed.

While these inconsistencies in the testimony of Overman and Linda could simply be the result of confusion or memories dimming with the passage of time rather than dishonesty; when considered in a light most favorable to the nonmoving party, they allow for a reasonable inference that the testimony of either Overman or Linda (or both) is not credible. *See* 27 Charles Alan Right & Arthur R. Miller, *Federal Practice and Procedure* § 6094 (2d ed. 2023) ("There are at least five ways to attack the credibility of a witness. . . . The fourth method involves contradicting the witness' testimony."); 27 Charles Alan Right & Arthur R. Miller, *Federal Practice and Procedure* § 6096 (2d ed. 2023) ("Since contradiction tends to show that the witness has erred or lied with respect to some facts, the jury could infer that the witness is generally an unreliable source of information and erred or lied with respect to other facts. . . . When a jury draws such an inference it follows the premise of the famous maxim, "falsus in uno, falsus in omnibus" or "he who speaks falsely on one point will speak falsely upon all." (footnotes omitted)). At trial, it is up to the jury whether they reach such a conclusion; however, on summary judgment, the nonmoving party is entitled to have this inference construed in his favor. *See Brooks v. Wal-Mart Stores, Inc.*, 164 Idaho 22, 27, 423 P.3d 443, 448 (2018) ("Inferences that can reasonably be made from the record are made in favor of the non-moving party." (citation omitted)).

In its memorandum decision, the district court addressed these inconsistencies and found that two of the three key points previously mentioned were "not material":

> There is no dispute that the card bears the signature[s] of both [Kelly] and [Linda]. There is no allegation that either signature was forged. How the signatures were obtained is not a material fact.
>
> At issue here is the donative intent of [Kelly]. What [Linda] knew or whether she was present for any discussion between [Kelly] and Overman is not a material fact that bears on the outcome of this matter.

The district court's reasoning fails to account for the overall effect on the contradictory testimony. We agree with the district court that, when reviewing whether there is a material fact

11

to preclude summary judgment, we focus on the elements required of the claim and whether there is a genuine issue of material fact regarding the element or elements challenged. *See Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 530, 887 P.2d 1034, 1037 (1994) ("This Court recently held that the party responding to a summary judgment motion is not required to present evidence on every element of his or her case at that time, but rather must establish a genuine issue of material fact *regarding the element or elements* challenged by the moving party's motion." (emphasis added) (alteration removed) (citing *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 273, 869 P.2d 1365, 1368 (1994)); *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 719, 918 P.2d 583, 588 (1996) ("Summary judgment is properly granted in favor of the moving party, when the nonmoving party fails to establish *the existence of an element essential* to that party's case upon which that party bears the burden of proof at trial." (emphasis added)).

While the disputed testimony touches on the requisite elements of a gift, we agree with the district court that the testimony does not directly address those elements. However, Linda's entire case largely rests on the testimony of Overman. Overman's testimony was the only evidence of Kelly's intent to give the account to Linda. Linda did not testify that Kelly intended to make the gift. In fact, she testified to believing she was initially just a signatory on the account. Thus, with Overman's testimony squarely at odds on key points with Linda's testimony, this entire case turns on Overman's credibility. In terms of defining a "material fact," we have explained that: "A material fact is one upon which the outcome of the case may be different." *Johnson v. N. Idaho Coll.*, 153 Idaho 58, 67, 278 P.3d 928, 937 (2012) (quoting *Peterson v. Romine*, 131 Idaho 537, 540, 960 P.2d 1266, 1269 (1998)). The outcome of this case may be different depending on whether the trier of fact finds Overman credible or not. Thus, there is a genuine issue of material fact with respect to a requisite element of Linda's claim because the credibility of Overman's testimony on the events surrounding Kelly's addition of Linda to the signature card is at issue.

Since disposition of this matter turns on the credibility of Overman's testimony, and her credibility is reasonably at issue, summary judgment was not proper here. In so holding, we are not blazing a new legal trail for defending against a summary judgment motion; rather, we travel on a well-worn path of clear legal precedents. *See J.R. Simplot Co.*, 144 Idaho at 615, 167 P.3d at 752 (citing *Athay,* 142 Idaho at 367, 128 P.3d 905) ("Summary judgment is not proper where the depositions and affidavits *raise any question as to the credibility of witnesses*.") (emphasis added)); *ParkWest Homes, LLC v. Barnson*, 154 Idaho 678, 682, 302 P.3d 18, 22 (2013) ("If the

record raises neither a question of witness credibility nor requires weighing the evidence, then summary judgment should be granted." (citing *Merrill v. Duffy Reed Constr. Co.,* 82 Idaho 410, 414, 353 P.2d 657, 659 (1960))); *Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 918, 500 P.2d 218, 219 (1972) ("In light of this rule, this court has held that summary judgment is improper when a conflict in affidavits respecting issues of fact exists, or when the relevant pleadings, depositions and affidavits *raise any question of credibility of witnesses.*" (emphasis added) (citations omitted)).

Although this is a well-traveled path, we wish to note that the phrase "any question of credibility" should not be construed overbroadly, so that the slightest inconsistency on an inconsequential matter would preclude summary judgment. Implicit in our past holdings restating this standard is that an issue of credibility precludes summary judgement only when it has become a genuine issue of material fact in the case. *See J.R. Simplot Co.*, 144 Idaho at 615, 167 P.3d at 752 ("Summary judgment is not proper where the depositions and affidavits *raise any question as to the credibility of witnesses.* That rule only applies, however, if the testimony of the witness is material." (emphasis added) (citing *Athay*, 142 Idaho at 367, 128 P.3d at 905)). Minor inconsistencies concerning inconsequential matters is simply "[a] mere scintilla" and insufficient "to create a genuine issue of material fact for the purposes of summary judgment." *Davis v. George & Jesse's Les Schwab Tire Store, Inc.*, 173 Idaho 235, ___, 541 P.3d 667, 672 (2023) (quoting *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 238, 108 P.3d 380, 385 (2005)). Where, as here, an inconsistency of material testimony reasonably calls into question a witness's ability to perceive, recollect, or honestly present the facts related to material issues in the case, summary judgment should be denied. The testimonial discrepancies in this case all relate to the events surrounding the execution of the signature card. Although Linda claims to recall with clarity how the signature card was executed, her testimony is inconsistent with several significant aspects of Overman's material testimony regarding how Kelly executed the signature card. These inconsistencies are not negligible and the facts concerning how the signature card was executed are "fact[s] of consequence" that have a "tendency to make [Overman's testimony] more or less probable[.]" I.R.E. 401(b). Indeed, these inconsistencies reasonably call into question Overman's credibility and her ability to perceive, recollect, or honestly present the factual issues in the case.

While a jury may ultimately find that all the elements of a gift have been established, that question should not be answered on summary judgment in light of the testimonial inconsistencies noted herein. Indeed, this is the type of determination that juries are particularly well-suited to

make. *See* I.D.J.I § 1.00 ("The law does not require [the jury] to believe all of the evidence admitted in the course of trial. As the sole judges of the facts, [the jury] must determine what evidence [the jury] believe[s] and what weight [the jury] attach[es] to it."). Reviewing the record de novo under our summary judgment standard of review, we conclude that a reasonable inference can be drawn concerning the credibility of material witness testimony essential to Linda's claim. Since summary judgment is improper when the record raises "any question as to the credibility of witnesses[,]" *Bosen*, 144 Idaho at 615, 167 P.3d at 752, *and* since the credibility questions relate to Overman's testimony concerning facts material to Linda's claim, we conclude that summary judgment was improper here. Accordingly, we reverse the district court's grant of summary judgment and remand for a trial.

## C. The appropriate evidentiary standard on summary judgment.

At oral argument before this Court, there was a lengthy discussion concerning the proper standard employed on summary judgment, given that the relevant statute requires proof by clear and convincing evidence. This discussion was particularly relevant given the district court's ruling on summary judgment. In addition to concluding there was no genuine dispute as to any material fact, the district court made the additional finding that Applington had carried her burden by clear and convincing evidence, essentially ascribing weight to the evidence presented at the summary judgment stage. Specifically, the district court found: "The [c]ourt finds that there is clear and convincing evidence that [Kelly] intended [Linda] to have the funds in his account upon his death." As we have already explained, the district court erred in concluding that there was not a genuine dispute of a material fact. However, the district court also erred by employing an incorrect legal standard on summary judgment. We take this opportunity to briefly reaffirm our adherence to our traditional summary judgment principles.

Review of our decisions shows that we have consistently rejected the invitation to depart from our traditional summary judgment principles—even when at trial a plaintiff would have to prove their case by clear and convincing evidence. In *Path to Health, LLP v. Long*, we explained that we do not "apply a different evidentiary standard in summary judgment proceedings to claims which must be proved by clear and convincing evidence." 161 Idaho 50, 54, n.3, 383 P.3d 1220, 1224 n.3 (2016) (citing *G & M Farms v. Funk Irrigation. Co.*, 119 Idaho 514, 518, 808 P.2d 851, 855 (1991)). Similarly, in *G & M Farms*, we also declined "to extend the elevated summary judgment burden of proof . . . [,]" and reaffirmed that "the traditional I.R.C.P. 56(c) summary

14

judgment principles and standards govern the granting of summary judgment . . . ." 119 Idaho at 518, 808 P.2d at 855.

Once again, we decline to apply a different standard on summary judgment and reaffirm that the traditional summary judgment principles and standards govern when deciding a motion for summary judgment, even where there is a heightened evidentiary standard—such as "clear and convincing evidence"— that must be met at trial. Summary judgment should not involve the weighing of evidence and is granted only when there is an absence of a genuine dispute of a material fact. *See ParkWest Homes, LLC*, 154 Idaho at 682, 302 P.3d at 22 ("If the record raises neither a question of witness credibility nor requires weighing the evidence, then summary judgment should be granted." (citing *Merrill,* 82 Idaho at 414, 353 P.2d at 659)).

**D. The attorney fees awarded to Linda by the district court are vacated.**

The attorney fees granted to Linda below were based on the district court's dismissal of Greg's equitable claims—the dismissal of those claims was not appealed or addressed by Greg on appeal. Nevertheless, Greg argues that the district court abused its discretion by awarding attorney fees to Linda under Idaho Code section 12-121 because it based its award of fees solely on "the equitable claims (fraud, breach of fiduciary duty, quasi estoppel and undue influence) and not on the I.C. § 15-6-104(a) claim." In its decision on attorney fees, the district court highlighted the lack of a factual basis to support the "equitable claims," recognizing that: "Gregory Kelso admitted that he had no facts to support his equitable claims." The district court ultimately found that "[Greg]'s claims were arguably meritorious when initially asserted, but discovery rendered the equitable claims frivolous, unreasonable or without foundation, yet [Greg] continued to pursue those claims."

While that may be true, there is still a surviving claim that has been remanded to the district court for trial on the merits. Therefore, we will not consider whether the award of partial fees was an abuse of discretion. Inasmuch as this case has been remanded, the prevailing party has not been determined. Accordingly, we vacate the district court's award of attorney fees and remand this matter for the district court to determine at the conclusion of the case whether the prevailing party is entitled to full or partial attorney fees under Idaho Code section 12-121. *See Eagle Rock Timber, Inc. v. Teton Cnty.*, 172 Idaho 172, ___, 531 P.3d 488, 503 (2023) ("On remand, the district court may reconsider whether attorney fees should be assessed once the matter is fully adjudicated.").

15

## IV. CONCLUSION

For the reasons explained above, we conclude that the district court erred in granting summary judgment. Accordingly, the district court's order granting summary judgment is reversed and this case is remanded for a trial. Additionally, we vacate the district court's award of attorney fees below so that fees may be considered at the conclusion of the case.

Chief Justice BEVAN, Justices BRODY, ZAHN and MEYER CONCUR.